Gary Del GLOVER, Appellant,

v.

The STATE of Texas, Appellee.

No. 44069.

Court of Criminal Appeals of Texas.

Sept. 16, 1971.

Kerry P. FitzGerald, Dallas (On Appeal), for appellant.

Henry Wade, Dist. Atty., John B. Tolle, Harry J. Schulz, Jr., W. T. Westmoreland, Jr., Edgar A. Mason, Robert T. Baskett and Jim Moss, Asst. Dist. Attys., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for robbery by assault where the punishment was assessed by the jury at 20 years.

We shall first consider appellant's contention that the "trial court committed fundamental error in overruling appellant's motion for a continuance."

■ The record reflects the indictment was returned on June 16, 1969. Counsel who was appointed for the appellant on June 24, 1969, subsequently filed several pretrial motions. On December 1, 1969, at appellant's request such counsel was removed and Dennis White was appointed to represent the appellant. On January 5, 1970, White filed a motion for a speedy trial, pointing out the appellant had been confined in jail for over six months. On January 13, 1970, the jury was selected. On the same date appellant filed his pro se motion for continuance based on the absence of material but unnamed witnesses. The motion did not state facts which were expected to be proved by such witnesses, or that witnesses were not absent by the procurement or consent of the appellant or that diligence had been used to procure their attendance, nor was there any assertion that the witnesses would not be available at a future date in the same term of court, all of which is required by Article 29.06, Vernon's Ann.C.C.P. See Burrell v. State, Tex.Cr.App., 446 S.W.2d 323. See also 1 Branch's Ann.P.C., 2d ed., Sec. 333, p. 366. Despite such defects the court permitted the appellant to testify the following day in support of his motion. He related that he desired the presence of Roger Phillips, Steven Allen and Robert Glenn Ethridge as witnesses in his behalf, though the nature, materiality or relevancy of their testimony was not mentioned. He acknowledged that he had not mentioned the names of these witnesses to his appointed counsel until the day before at which time subpoenas were issued for such witnesses. He claimed he would have informed his counsel earlier if counsel's jail visits had been more frequent, although he did not explain why the witnesses had not been mentioned in his letters to his counsel. The motion for continuance was overruled. At the trial the co-defendant Ethridge testified on behalf of the appellant. The record does not reflect whether the subpoenas issued were executed or served. The motion for new trial did not complain of the court's action in overruling the motion for continuance, and there has been no showing under oath from any source as to what the other two witnesses would have testified if called. Cf. Palasota v. State, Tex.Cr.App., 460 S.W.2d 137.

The record does not reflect the court abused its discretion in overruling the motion for continuance or that the appellant was harmed by such action.

Next appellant claims the court erred in permitting three State's witnesses to make an in-court identification of him since their testimony "was tainted by an unduly suggestive and fundamentally unfair line-up, in violation of appellant's rights under the Fourteenth Amendment of the United States Constitution."

Here the facts become important. Clayton Burns, Manager of Kroger's Food Store in the Casa View Shopping Center in Dallas County on May 23, 1969, testified that on such date about 1 p. m. he was inside the cashier's office and in the process of cashing a check for a customer when a dark haired man approached, pointed a gun in his face and ordered him to "sack up the money." About this time he observed a blond-headed man armed with a large automatic pistol walk up and inject a shell into the chamber of his weapon. When the money sack containing approximately $1,429 was handed over, both men left the store, but when they saw that Burns was following them they began to run.

Burns made a positive in-court identification of the appellant as to the blond-headed robber.

Barbara Davis, whose check Burns was cashing when the robbery occurred, corroborated Burns' testimony. She testified she had a good view of the faces of both men and related "I was so scared that I just stood there and stared at them. * * *" She, too, identified the appellant as the blond robber.

Ruth Henson was driving past the store in question when two men ran in front of her and continued down an alley. The men wore white windbreakers, baseball caps and sunshades and she observed they were carrying guns. She then turned left at the intersection and saw the men enter a gold Chevrolet and take off their windbreakers, hats and glasses. The blond man then lay down in the car seat and the other man drove off. Mrs. Henson followed for approximately one mile until she was able to obtain the license number of the vehicle which she reported to the police. She also identified the appellant as the blond man she saw.

Dallas Detective E. L. Boyd testified that the license number was issued to a Chevrolet owned by Robert Ethridge, and later on in the day of the robbery he arrested the dark haired Ethridge at his home and found him in possession of five bills bearing serial numbers matching bills taken in the robbery.

The appellant was arrested later at Little Rock, Arkansas.

Ethridge, testifying for the defense, admitted the robbery in question but claimed he was with a man named Bill Williams at the time. On cross-examination he acknowledged that when he entered his plea of guilty in court he had personally stipulated he was with the appellant during the course of the robbery.

It appears to be appellant's contention that the pretrial lineup viewed by the three identifying witnesses was conducted under such circumstances as to amount to a denial of due process, which contention must be tested by the "totality of the circumstances" rule. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402; Crume v. Beto, 5 Cir., 383 F.2d 36; Pearson v. United States, 5 Cir., 389 F.2d 684; Gram v. State, Tex.Cr.App., 422 S.W.2d 922; Evans v. State, Tex.Cr.App., 444 S.W.2d 641; David v. State, Tex.Cr.App., 453 S.W.2d 172, 178; Proctor v. State, Tex.Cr.App., 465 S.W.2d 759. Such contention is based chiefly on the claim that the appellant was the only blond in the lineup and was the tallest in the group. There is no claim that appellant was without counsel and did not waive the right to counsel at the lineup. See United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178.

Before each witness was permitted to make an in-court identification of the appellant in the presence of the jurors a separate hearing in their absence was held. See Martinez v. State, Tex.Cr.App., 437 S.W.2d 842. Appellant's objections were overruled. Thereafter, before the jury the State elicited from the witnesses their in-court identification. At no time did the State attempt to use the pretrial identification to bolster or support the in-court identification. On cross-examination the appellant extracted from the witnesses the fact and nature of the pretrial identification and subsequently argued the issue of identification to the jury.

Each of the witnesses testified that "some time," "some days" after the robbery they viewed a lineup at which each identified the appellant. Each was of the impression that there were at least two blond-headed men in the lineup. Upon being shown a photograph of the six-man lineup they admitted that appellant was the only blond in the photograph or was the blondest and the other "blond" man appeared to be darker haired than they recalled; that the appellant was the tallest man in the photograph.

The photograph of the six men introduced into evidence reflects that they were of the same approximate height, age, weight, color and race. All wore jail garb.

■ Each of the witnesses testified they had ample opportunity to observe the appellant during the alleged criminal act or shortly thereafter. The witness Burns testified his in-court identification was based solely upon such observations. There appears no discrepancy between any pre-lineup description given the police by the witnesses and the actual appearance of the appellant, nor was there an identification of some other person by any of the witnesses. There was not shown to have been any failure to identify the appellant on a prior occasion. While the lapse of time between the act and identification was not established, it does not appear to have been long, a matter of several weeks at the longest. It is true that each of the witnesses made a photographic identification of the appellant from a set or sets of photographs shown them by the police. While this is a factor in determining whether the in-court identification is of independent origin, the mere showing of pictures to a witness prior to a lineup or in-court identification is not a denial of due process. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247; United States v. Sutherland, 5 Cir., 428 F.2d 1152; Jones v. State, Tex.Cr.App., 458 S.W.2d 62; Evans v. State, Tex.Cr.App., 444 S.W.2d 641; Daniels v. State, Tex.Cr.App., 464 S.W.2d 368. See also Proctor v. State, supra, and cases there cited. And there is nothing in this record to indicate the photographic identification procedure was suggestive, much less so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. See Jones v. State, supra.

It does appear that the witnesses viewed the same lineup. It was shown, however, that each witness in company with a separate officer was arranged in such a way that they were unable to observe or hear the other witnesses. There was nothing to indicate any suggestiveness on the part of the police. All made ready identifications. The witness Davis related a detective "asked me did I recognize anyone up there and I said, 'Yes' and I told him who it was. * * *" The witness Henson testified, "I didn't look at any of the others; I recognized him right off. * * * I don't remember any of the others at all because the minute that they came out I knew that was him."

■ While it is true that the appellant may have been the only blond in the lineup or at least the blondest, when the "totality of circumstances" surrounding the lineup is considered together with the fact that each identifying witness had an adequate opportunity to view the appellant at close range during the commission of the offense or shortly thereafter, there is nothing in this record before us to indicate that the identification in open court of the appellant was the result of any suggestive influence of the police and therefore "tainted." This appellant has not been deprived of due process. See Thurman v. State, 262 N.E. 2d 635 (Ind., 1970) (where accused was the only one in lineup with an "Afro" haircut); People v. Olbrot, 117 Ill.App.2d 366, 254 N.E.2d 569 (1969) (where accused was shortest man in lineup). See also State v. Parker, 282 Minn. 343, 164 N.W. 2d 633 (1969); United States v. De Bose, 433 F.2d 916 (6th Cir., 1970).

We have examined appellant's pro se brief filed in this court urging, among other contentions, the same two grounds of error discussed above. The other contentions are without merit and do not require discussion. See Article 40.09, Sec. 13, V. A.C.C.P.

The judgment is affirmed.