**Manuel Garcia GARZA, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 13–84–376–CR.**

Court of Appeals of Texas,
Corpus Christi.

May 30, 1985.

James M. Whitten, Sinton, for appellant.

Richard D. Hatch, Co. Atty., Sinton, for appellee.

NYE, C.J., and SEERDEN and BENA-VIDES, JJ.

## OPINION

SEERDEN, Justice.

This is an appeal from a conviction for the misdemeanor offense of driving while intoxicated. The appellant's guilt was determined by a jury and the court assessed punishment at confinement in county jail for 120 days and a $500 fine. Appellant asserts by his sole ground of error that the trial court erred in denying his motion for new trial alleging jury misconduct. We affirm the conviction.

The sufficiency of the evidence to convict is not challenged, so a recitation of the facts regarding the offense is not necessary. Appellant's complaint is that, during the jury deliberations, one of the jurors was coerced into voting to convict, and, therefore, the verdict was not unanimous. This complaint was asserted in a motion for new trial filed along with an affidavit of one of the jurors. *See* TEX.CODE CRIM. PROC.ANN. arts. 40.04 and 40.03(8) (Vernon 1979).

In the affidavit which accompanied the motion for new trial, Laverne Underwood stated:

I was a member of the jury in Cause No. 2301 styled The State of Texas vs. Manuel Garcia Garza ... After several

votes the jury was deadlocked, with the other five jurors voting for guilty and I voting for not guilty. I do not feel that Mr. Garza, the Defendant, was guilty of driving while intoxicated under the evidence. I feel that we were left in the jury room too long. I feel that I was pressured by the other jurors' personal stories and argument to me to change my vote to guilty. This resulted in a forced verdict of guilty, which I do not agree with and I feel that my free will was taken from me by the other members of the jury. My vote of not guilty should have stood. We voted at least five or six times and I always voted not guilty until the other jurors continued to coerce me. The other jurors intimated that "I was less than human" because of my vote to find the Defendant not guilty.

Laverne Underwood also testified at a hearing on appellant's motion for new trial. The record reflects the following testimony:

[By Defense Counsel]:

Q Okay. Do you feel that after all was said and done that the vote to find Mr. Garza guilty was a proper vote on your part of your own free will?

A I can't blame anybody else for my vote, that is true.

Q But what happened?

A Well, I think we stayed in there so long, and I was all alone in my opinion. Everybody else was of a complete different opinion than I was. We voted five or six times, and anyhow, they were not receptive to anything discussing anything at all like the failure of the breathalyzer to work.

\* \* \* \* \* \*

[Cross Examination by State's Counsel]:

Q Mrs. Underwood, you did definitely vote guilty; didn't you?

A I did.

Q And when you finally voted guilty it was of your own free will; was it not?

A Under pressure.

Q Was it voluntary on your part?

A Voluntary on my part.

At the conclusion of the witness' testimony, the trial court questioned her as follows:

THE COURT: Mrs. Underwood, when you came back into the courtroom did the Court poll each and every one of the ladies on the jury that day and that was your vote?

THE WITNESS: In the answer I wanted to speak out then, but I didn't. I could hardly contain myself.

THE COURT: Do you have any recollection of how long you stood in the jury room?

THE WITNESS: I believe it was about two hours; wasn't it?

THE COURT: The verdict was filed at 5:46 p.m., and the argument began at 3:40 p.m. The Court's Charge was started at 3:40, so I assume you can add 30 minutes to it for argument. So that would be about an hour and a half.

The State offered no controverting evidence and the trial court denied appellant's motion for new trial.

 We note at the outset that the trial judge is the trier of fact at a hearing on a motion for new trial, and his determination will not be disturbed absent a showing that he abused his discretion. *Jones v. State*, 596 S.W.2d 134, 138 (Tex.Crim.App. 1980). We also note that, in order to be entitled to a new trial pursuant to TEX. CODE CRIM.PROC.ANN. art. 40.03(8), appellant must establish that the jury was guilty of misconduct, and that the misconduct was such as to deprive him of a fair and impartial trial. *Sandoval v. State*, 151 Tex.Cr.R. 430, 209 S.W.2d 188, 190 (1948).

Appellant contends that the trial court abused its discretion by denying his motion for new trial, and bases this assertion on *Smith v. State*, 530 S.W.2d 827 (Tex.Crim. App.1975) and *Brown v. State*, 475 S.W.2d 938 (Tex.Crim.App.1971). These cases held that it is an abuse of discretion to overrule a motion for new trial based upon jury misconduct when no controverting evidence has been introduced. *Smith*, at 830; *Brown*, at 958. Although the State did not introduce any evidence which controverted

the allegation of jury misconduct in the case at bar, the cases cited by appellant are plainly distinguishable.

The jury misconduct at issue in both *Smith* and *Brown* involved the discussion by the jury of the defendant's failure to testify. Discussing a defendant's failure to testify and considering it as a circumstance against a defendant has long been held to be jury misconduct amounting to reversible error, *Smith,* at 830; *Canales v. State,* 152 Tex.Cr.R. 198, 211 S.W.2d 950 (1948). In contrast, our research reveals no instance where an allegation of a coerced verdict, even if uncontradicted, has been held to constitute jury misconduct resulting in reversible error. *Fernandez v. State,* 116 S.W.2d 1067, 1072 (Tex.Comm'n App.1938, opinion approved); *Ross v. State,* 100 Tex. Cr.R. 295, 273 S.W. 582, 583 (1925); *Bacon v. State,* 61 Tex.Cr.R. 206, 134 S.W. 690, 692–693 (1911); *Pilot v. State,* 38 Tex.Cr.R. 515, 43 S.W. 1024, 1026 (1898); *Montgomery v. State,* 13 Tex.Ct.App. 74, 75 (1882).

■ More to the point, appellant is attempting to impeach the jury's verdict by revealing the reasons for the conclusions reached and the mental processes by which the jury reached its verdict. It is well established that jury verdicts may not be impeached in this manner. *Daniels v. State,* 600 S.W.2d 813, 816 (Tex.Crim.App. 1980); *Gray v. State,* 628 S.W.2d 228, 233 (Tex.App.—Corpus Christi 1982, pet. ref'd). Specifically, it has been held that a juror's complaint that the verdict was forced upon him by the other jurors is an improper attempt to impeach a jury's verdict. *Fernandez,* 116 S.W.2d at 1072; *Pilot,* 43 S.W. at 1026; *Montgomery,* 13 Tex.Ct.App. at 75.

This general rule rests upon sound public policy considerations. It has three primary prophylactic functions: (1) to ensure the finality of judgments, *Arnold v. State,* 148 Tex.Cr.R. 310, 186 S.W.2d 995, 999 (1945); (2) to ensure freedom in jury deliberations, *Fernandez,* 116 S.W.2d at 1071; and (3) to protect against post-verdict harassment of jurors, *Bacon,* 134 S.W. at 692–693. In *Fernandez,* the Court of Criminal Appeals articulated the reasoning behind this general rule as follows:

[i]t would be a dangerous and exceedingly pernicious practice for the courts to permit the sanctity of the jury room to be invaded, and jurors to be interrogated as to the arguments used in their deliberations, and the influence of such arguments upon their minds, and the reasons and considerations upon which their verdicts were based. There might arise, perhaps, an extreme case in which such a practice would be tolerated to prevent flagrant wrong and injustice, but this court would not be willing to sanction the procedure unless it should manifestly appear that the ends of justice imperatively demanded it. If it were permitted to attack and set aside a verdict because of arguments and reasons advanced and urged by jurors in their deliberations thereon, it would destroy free discussion and interchange of opinions among jurors. It would open the door to a searching inquiry in relation to every act and word which transpired in the jury room, and would subject each individual juror to be placed upon trial before the court to answer for the soundness and propriety of the opinions expressed by him in the jury room.

116 S.W.2d at 1071 (quoting *Jack v. State,* 20 Tex.App. 656, 661 (1886)). The Court further stated in *Bacon,* regarding an affidavit from a juror asserting a coerced verdict, that:

[n]o case has yet occurred in this state wherein courts have tolerated such affidavits to impeach verdicts. If ever admissible, they can only be allowed in an extreme case, and under imperative necessity for the accomplishment of justice. The rule rests upon the obvious ground that, were it otherwise, few verdicts would escape attack from jurors under influences that would be brought to bear

upon them after their discharge by the court.

134 S.W. at 692–3 (quoting *Johnson v. State*, 27 Tex. 758, 769 (1865)).[1]

██ Section 40.03 of the Code of Criminal Procedure delineates specific acts of jury misconduct, the occurrence of which may entitle a defendant to a new trial. This statutory list is not exclusive. Subsection (g) provides that a new trial may be granted when the trial court is of the opinion that a particular nondelineated act constituting jury misconduct has occurred which denied the defendant a fair and impartial trial. Whether a particular act constitutes such jury misconduct is left to the sound discretion of the trial court. Though Subsection (g) does authorize the use of an affidavit of a juror as proof of jury misconduct, this authorization has been restricted by the courts through application of this long-standing general rule of law in all but the most extreme cases. The uncontroverted claims of the juror in the instant case establish conduct by the jury that was not so extreme in nature as would require a new trial. Jury deliberations often involved heated and emotional discussions into which we will not intrude. The trial court did not abuse its discretion in denying appellant a new trial.

Appellant's ground of error is overruled and the judgment AFFIRMED.

---

1. For a good discussion of this general rule and its underlying policy considerations as applied by the federal courts, *see U.S. v. Hockridge*, 573 F.2d 752 (2nd Cir.1978), *cert. denied*, 439 U.S. 821, 99 S.Ct. 85, 58 L.Ed.2d 112 (1978); *U.S. v. Grieco*, 261 F.2d 414 (2nd Cir.1958), *cert. denied*, 359 U.S. 907, 79 S.Ct. 582, 3 L.Ed.2d 572 (1959); *See* also *U.S. v. Blackburn*, 446 F.2d 1089 (5th Cir.1971), *cert. denied*, 404 U.S. 1017, 92 S.Ct. 679, 30 L.Ed.2d 665 (1972).