**Joseph Earl SCOTT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 660–86.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 18, 1987.

Jerry D. Conner, Doug O'Brien, of counsel, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Timothy G. Taft and Jon Munier, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was convicted by a jury of felony theft of an automobile valued between $750.00 and $20,000.00. V.T.C.A., Penal Code, § 31.03(e)(4)(A). The jury assessed punishment, enhanced by two prior felony convictions, alleged and proved, at 75 years' imprisonment. The Court of Appeals reversed the judgment of conviction and ordered an acquittal of the felony theft after finding that evidence of "value" was insufficient to support the felony theft conviction. *Scott v. State*, 712 S.W.2d 782 (Tex.App.—Houston [1st Dist.] 1986). In its petition for discretionary review the State contends the decision of the Court of Appeals is in conflict with *Sullivan v. State*, 701 S.W.2d 905 (Tex.Cr.App.1986), dealing with an owner's testimony in a theft case as to "value," which decision was not mentioned by the Court of Appeals in its opinion though cited and relied upon by the State. We granted discretionary review to determine the correctness of the Court of Appeals' decision.

Billy Shelby testified that on September 16, 1984, his 1977 Monte Carlo Landau, two door, hard top automobile was stolen.[1] The theft was reported to the police. Within an hour or so the vehicle was recovered and appellant and another were apprehended while in the process of stripping the vehicle of its tires and wheels.

Shelby testified that he purchased the Monte Carlo brand new on September 12, 1977 for $5,400.00 some seven years before the theft. When he was asked to estimate the value of the car at the time it was stolen appellant objected that Shelby was not shown to be qualified to testify as to value and further objected to "estimation" and "speculation." The prosecutor rephrased his question and over objection was allowed to ask:

"Q. You can answer, Mr. Shelby. What do you think the car was worth to you at that time?

"A. Well, the car to me, is worth its weight in gold to me; because that's all I had. I had it ever since it was brand new, and I took care of it.

"Q. Let's put a dollar figure on it.

"MR. BOYD (Appellant's Counsel): Make the same objection.

"MR. MUNIER (Prosecutor): I'll withdraw it, Your Honor."

Shelby then testified that later he traded the 1977 Monte Carlo in on a 1985 Jimmy S10. The record then reflects:

"Q. What did they give you for the trade-in value of the car?

"A. They gave me $1,000.00. I got hooked.

"Q. You got hooked. You think you got cheated? You think your car was worth more than a thousand?"

Appellant's objection to the question was sustained and the subject of value was not again pursued by interrogation of Shelby or other witnesses. Officer Forrest Stodtman did testify that he viewed the vehicle at the scene where it was recovered and that it was "fairly clean and in fairly good condition."

In reversing the conviction the Court of Appeals observe that Shelby did not testify as to the cash value of the car or the amount for which he would have been willing to sell it at the time of the offense, and

1. Shelby testified that he had gone to visit a friend, Norman Harris, who owned a lounge, and that he got Harris to help him jump start his Monte Carlo because, despite a new battery, he had been having trouble starting the car. After starting the car he left the keys in the ignition and the motor running and returned to the lounge for about five minutes. When he emerged he saw his car being driven off. Later when he claimed the car at a wrecker lot a mechanic "fixed" his car for $25.00 and it never failed to start again.

the trade-in value testimony was not probative of the car's cash value on the date it was stolen. It then stated "Trade-in value is a different standard than cash value. Compare *Sweeney v. State*, 633 S.W.2d 354 (Tex.App.—Houston [14th Dist.] 1982, pet. ref'd). . . ."

The indictment in charging the primary offense alleged in pertinent part that appellant on or about September 16, 1984 "did then and there unlawfully appropriate by acquiring and otherwise exercising control over property, namely, one automobile, owned by Billy Shelby, hereafter styled the Complainant of the value of over seven hundred fifty dollars and under twenty thousand dollars with intent to deprive the Complainant of the property and without the effective consent of the Complainant."

The value as alleged, of course, must be proved in order to sustain a conviction.

V.T.C.A., Penal Code, § 2.01, provides in part that "no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt."

V.T.C.A., Penal Code, § 31.08(a), in pertinent part defines value in theft prosecutions as follows:

"(a) Subject to the additional criteria of Subsections (b) and (c) of this section, value under this chapter is:

"(1) the fair market value of the property or service at the time and place of the offense; or

"(2) if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the theft."

In *Sullivan*, relied upon by the State, the owner first stated he didn't have any idea as to the price of the gun at the time it was stolen. Later, on the ground that he was the owner of the gun, he was permitted to state an opinion as to market value. The record reflects on redirect examination the following:

"Q. As the owner of that gun, do you have any idea as to what the market value of that gun was?

"A. Since it has been fired and used, I would say Five Hundred Dollars ($500.00)."

On cross-examination the following exchange then took place:

"Q. That's why you placed it so high?

"A. Yes.

"Q. Because you just don't want to sell it?

"A. *It's worth Five Hundred Dollars ($500.00) at least.*" (Emphasis supplied.)

After discussing cases decided before and after § 31.08 and the rule regarding proof of value, this Court wrote:

"Thus, there seems to be two corollaries to the rule regarding proof of value. When the proof of value is given by a non-owner, the non-owner must be qualified as to his knowledge of the value of the property and must give testimony explicitly as to the fair market value or replacement value of the property.

"However, when the owner of the property is testifying as to the value of the property, he or she may testify as to his or her opinion or estimate of the value of the property in general and commonly understood terms. Testimony of this nature is an offer of the witness' best knowledge of the value of his property. Such testimony will constitute sufficient evidence for the trier of fact to make a determination as to value based on the witness' credibility. This is true even in the absence of a specific statement as to 'market value' or 'replacement value.'

"When an owner testifies, the presumption must be, as the rule in *Trammell* [511 S.W.2d 951 (Tex.Cr.App.1974)] states, that the owner is testifying to an estimation of the fair market value. Certainly the owner may reasonably be understood to be testifying as to the fair market value of the property either in terms of the purchase price or the cost to him of replacing the stolen property. To hold otherwise would be to make the wholly unwarranted presumption that the owner is basing his estimate on senti-

mental value. This is a presumption this Court will not entertain for obvious reasons.

"If the appellant wishes to rebut the owner's opinion evidence he must do more than merely impeach the witness' credibility during cross-examination. He must offer controverting evidence as to the value of the property."

Thereafter it was concluded:

"In the instant case, the owner clearly testified that the value of the gun was $500.00. Viewing the evidence in the light most favorable to the verdict, as we must, we find the evidence is sufficient to show that the market value of the stolen gun was over the jurisdictional amount of $200.00."

The State argues that *Sullivan* made clear that the owner of stolen property is competent to give his opinion as to the value thereof, and that while Shelby's opinion of the value of the Monte Carlo was given in the context of, and in reference to, the trade-in value of the vehicle shortly[2] after the offense, the testimony falls well within the rule of *Sullivan*. The State contends the testimony that Shelby received $1,000.00 for the vehicle in a trade-in and thought he got cheated expressed his opinion that the value was in excess of $1,000.00 and certainly more than the $750.00 jurisdictional amount.

Appellant urges that the Court of Appeals was correct that the proof of a trade-in value was insufficient to establish the value of the stolen vehicle as being greater than $750.00. Appellant contends that nothing in *Sullivan* is inconsistent with the opinion of the Court of Appeals for in *Sullivan* the owner clearly testified the value of the gun was $500.00 whereas in the instant case the only evidence by complainant-owner was that a trade-in allowance value of $1,000.00 was set on the Monte Carlo. Appellant argues a trade-in allowance is not the market value of an automobile.

In *Trammell v. State*, 511 S.W.2d 951 (Tex.Cr.App.1974), the owner of a stolen television set testified that her set could not be bought anywhere for fifty dollars. "Though [the owner] never stated that the cash market value of the television set was $50.00 in clear and precise language, her testimony was obviously meant to convey that idea and must have been so understood by the jury and appellant." *Trammell*, supra, at 954. And in *Sullivan* it was held that an owner may testify as to his opinion or estimate of value of such property in general and commonly understood terms, without making specific statement as to market or replacement value. *Sullivan*, supra, at 909.

In *Sweeney*, supra, cited by the Court of Appeals, a television set was stolen. The only evidence of value was from the owner to show that it was in excess of $200.00 as alleged.

"Q. When you purchased the Sony television, approximately how much did you pay for it?

"A. *Financed it* and it cost me seven hundred.

"Q. That was a color TV?

"A. Yes, it was.

"Q. Approximately what size was it?

"A. Twenty-one inch, I believe." (Emphasis supplied.)

In *Sweeney*, supra, the Court of Appeals held that there was no evidence as to the age and condition of the television set, nor any revelation of the terms under which the purchase of the television was financed. The court concluded that the State had failed to sustain its burden of establishing beyond a reasonable doubt that the value of the television at the time of the offense was over $200.00 as alleged in the indictment.

The record reveals the car was seven years old and the owner had had difficulty starting it at the time of the offense, although it appeared to an officer to be in "fairly good condition."

There is, of course, no evidence of fair market value of the Monte Carlo at the time of the offense from a non-owner. And the only evidence as to value from the

---

**2.** The offense occurred on September 16, 1984 and the trial commenced on May 6, 1985.

owner (Shelby) was that he, after the alleged offense and before trial, got $1,000.00 for the Monte Carlo in a trade-in on another vehicle and that he got "hooked." The details and circumstances of the trade-in are not in the appellate record. Here, unlike *Sullivan* and *Trammell*, the owner was not testifying as to his opinion of the cash market value at the time of the offense. Trade-in value can be and often is based on a different standard than cash value, and Shelby's testimony could be interpreted to mean he got "hooked" compared as to what was being offered for other trade-ins.

Viewing the evidence in the light most favorable to the verdict, we cannot conclude that a rational trier of facts could have found beyond a reasonable doubt the element of value as alleged in the indictment. See *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1974); *Wilson v. State*, 654 S.W.2d 465 (Tex.Cr.App.1983) (Opinion on Rehearing); *Houston v. State*, 663 S.W.2d 455 (Tex.Cr.App. 1984). We conclude that *Sullivan* is distinguishable on its facts and testimony given.

The judgment of the Court of Appeals reversing the conviction and rendering a judgment of acquittal for felony theft is affirmed.

W.C. DAVIS, McCORMICK and WHITE, JJ., dissent.

TEAGUE, Judge, concurring and dissenting.

The majority opinion by Presiding Judge Onion correctly sustains the judgment of the court of appeals that held that the admitted evidence going to the fair market value of the complainant's automobile when it was stolen was insufficient.

It is or should now be axiomatic that the owner of the involved property can testify to its fair market value, even if he could not qualify to testify about the value of like property belonging to someone else. However, as Justice Spears of the Supreme Court of Texas recently pointed out in *Porras v. Craig*, 675 S.W.2d 503 (Tex.1984), "Even an owner's testimony, however, is subject to some restrictions. In order for a

property owner to qualify as a witness to the [value] of his property, his testimony must show that it refers to market, *rather than intrinsic or some other value of the property.* This requirement is usually met by asking the witness if he is familiar with the market value of his property. (Citations omitted.)" (504–505). (My emphasis.) For obvious reasons, "fair market value" and "trade-in value" are patently not the same. "Trade-in value" usually amounts only to intrinsic value, not to the owner, but to the person who pays the owner for his trade-in, which figure as we all have learned in our lifetimes when we traded in a vehicle may actually be far above or below actual fair market value, i.e., the price that is agreed upon for the vehicle that is going to replace the trade-in vehicle usually governs the price that will be paid for the trade-in vehicle. It may far exceed the actual fair market value or it may actually be well below the actual fair market value; it just depends on how good a "horse trader" the owner of the trade-in vehicle might be.

In this instance, the complaining witness's testimony constituted no evidence of the fair market value of his automobile when it was stolen from him because his testimony only went to the amount of money that he received for the automobile when he traded it in after the automobile had been recovered. We are not given any details of what occurred when he traded in his automobile.

The majority opinion correctly holds that the evidence was insufficient to establish beyond a reasonable doubt the fair market value of the stolen automobile.

I am unable to agree, however, that the majority opinion has satisfactorily distinguished what a majority of this Court stated in *Sullivan v. State*, 701 S.W.2d 905 (Tex.Cr.App.1986). Of course, for the reasons that I gave in the dissenting opinion that I filed in that cause, that case should be quickly and expressly overruled. I find that the problem with *Sullivan*, supra, lies in the following statement: "However, when the owner of the property is testify-

ing as to the value of the property, he or she may testify as to his or her opinion or estimate of the value in general and commonly understood terms." (909). If that statement is "good" law, which I strongly disagree that it is, the majority opinion certainly needs to discuss it or expressly overrule it. Because the majority declines to expressly overrule *Sullivan,* supra, I am compelled to dissent.

For the above and foregoing reasons, I both concur and dissent.