Elroy CHANDLER, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 13–87–100–CR.

Court of Appeals of Texas,
Corpus Christi.

Dec. 31, 1987.

Mark H. Woerner, Corpus Christi, for appellant.

Grant Jones, Corpus Christi, for appellee.

Before NYE, C.J., and DORSEY and KENNEDY, JJ.

## OPINION

DORSEY, Judge.

A jury found appellant guilty of burglarizing a habitation, and the trial court assessed punishment at 16 years in the Texas Department of Corrections.

In his first three points of error, appellant contends that (1) the structure burglarized was a building rather than a habitation, (2) the evidence fails to corroborate accomplice testimony, and (3) a pretrial identification procedure was impermissibly suggestive. We sustain appellant's first point of error and remand the case to the trial court for an entry of acquittal.

Burglary of a habitation is a first degree felony, while burglary of a building is second degree felony. Tex.Penal Code Ann. Sec. 30.02 (Vernon 1974). Habitation and building are defined in Section 30.01.

"Habitation" means a structure or vehicle that is adapted for the overnight accommodation of persons, and includes:

(A) each separately secured or occupied portion of the structure or vehicle; and

(B) each structure appurtenant to or connected with the structure or vehicle.

"Building" means any enclosed structure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament, or use.

In the present case, the place burglarized was an apartment in the Christi Estates Apartment complex. The particular apartment was vacant, unfurnished, and unleased. The unit had been there for 18 years and had been rented many times before. The apartment contained a dishwasher, stove, refrigerator, disposal, lighting fixtures, and hot water heater, most of which were built in. The appellant took the refrigerator. The water and electricity were turned on and the air conditioner was hooked up. The apartment had been vacant about 35 days.

The question is whether this structure was "adapted for the overnight accommodation of persons," or whether it was merely, at the time of the burglary, "intended for use or occupation as a habitation."

In *Jones v. State*, 532 S.W.2d 596 (Tex. Crim.App.1976), the Court held that the building involved was not a habitation. The structure was a new house, still owned by a general contractor. The house was completed and the contractor had entered a contract of sale for the house on the day before the burglary, but possession had not changed hands. No one lived there or had lived there. There was no furniture in the house, no refrigerator, and while there were light fixtures, there may not have been "power," although there was a water connection.

The Court held "that the structure or vehicle must at the time of the alleged offense have been actually adapted for the overnight accommodation of persons or at least at some prior time used for the overnight accommodation of persons and still 'adapted for the overnight accommodation of persons.'"

The Court noted the statutory definition, that "building" means any enclosed structure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament, or use, and stated "if the definition of a 'building' as a structure intended for use or occupation as a habitation can have any meaning, then 'habitation' cannot be construed as meaning a structure or vehicle intended to be used as a residence or a dwelling."

Shortly after *Jones*, in *Hargett v. State*, 534 S.W.2d 909 (Tex.Crim.App.1976), the same issue was presented. The property involved was a rental house which the landlord had rented but which the new tenants had not yet occupied. It was completely furnished and ready for occupancy.

The Court stated:

"In the instant case, we conclude that the testimony of the owner Clark is suffi-

cient to prove that the house was a habitation when burglarized. It has been rented complete with furniture so that it certainly was adapted for the overnight accommodation of persons. The record is silent as to any utilities. This house was not shown to be a new one which had never been lived in, but one of several houses which Clark 'rented periodically.' Clark thought that the tenant Poland had moved some things into the house and after the burglary asked him if 'he had anything missing.' Poland's [This probably should be Clark's] answer was struck from the record on appellant's objection.

The evidence is sufficient to sustain the conviction."

In *Moss v. State*, 574 S.W.2d 542 (Tex. Crim.App.1978), the involved property had been rented in the past, most recently some two months prior to the date of the offense. "Cathy Taylor, who had care, custody and control of the house, testified that she intended to rent it in the future. She also testified that the electricity 'wasn't supposed to be off,' but there was no light bulbs in the house; the water was turned off. Other than 'an old dresser' that was across the front door, the only furniture contained in the house was that belonging to Taylor's granddaughter. Her belongings included the mattress and box springs behind which appellant was found hiding, a bed, dining room set, stove, and gas heaters. These items had been stored in the house on the day of the offense, and Taylor planned to let them remain there 'for a while.' The stove and heaters were not connected. Taylor testified that her belongings were in the house for storage only, and that in order to rent the house she would have had to move them out and install other furniture and appliances." The court held that the house was not *still* "adapted for the overnight accomodations" and thus was not habitated. *Moss* at 545 [emphasis in original].

In *Lewis v. State*, 631 S.W.2d 813 (Tex. App.—Fort Worth 1982, no pet.), the property was a large one-bedroom apartment. While the opinion contains no other facts about the apartment, the stolen property included a portable radio, a television set, microwave oven, and jacket. The Court found sufficient evidence to conclude the structure was a habitation.

In *Bazroux v. State*, 634 S.W.2d 919 (Tex.App.—Houston [1st Dist.] 1982, no pet.), the owner of the house was temporarily out of the country on a twenty-eight day business tour, the kitchen was completely equipped, and the house contained furnishings. The electricity was operating. The Court stated, "Nothing in the record indicates that the premises was in a condition other than one of suitability for the owner's resumption of normal life upon his return from the periodic travel required in his employment." The conviction for burglary of a habitation was sustained.

In *Blankenship v. State*, 715 S.W.2d 132 (Tex.App.—Texarkana 1986, pet. granted), the key issue was whether a rental house was a habitation. The house was not rented to tenants at the time of the burglary. The house had bedrooms, a kitchen, and a living room, and it was wired for electricity and had a water connection. The landlord testified he had rented the house to tenants in the past and intended to do so in the future. He further stated, without objection, that the house was adapted for the overnight accommodation of persons. There was no evidence as to the specific furnishings which the house contained. The Court stated that a "finished structure designed for, built as, and intended as a place for people to live is logically a habitation."

■ The logic in *Blankenship* appears to conflict with the requirement in *Jones*, that the premises actually be adapted, and still be adapted, for the overnight accommodation of persons. *Blankenship* focuses more on the subjective character of the premises than on the objective features showing adaptation. *Jones, Moss, and Hargett* all seem to focus on the actual ability of a person to inhabit the premises in the condition which the burglar found the premises. What the structure appeared to be from the outside is irrelevant.

It is inconceivable that a reasonable person would find an unfurnished apartment fit for overnight accommodation. While the apartment in the present case may have been intended for overnight accommodation, and may have been so used in the past, at the time appellant entered the apartment it was not actually so adapted. Appellant's first point of error is sustained.

■ In his second and third points of error, appellant contends the evidence is insufficient to corroborate the accomplice witness testimony and that Gavriel Trevino's identification testimony should have been suppressed. As Trevino's identification helps to corroborate the accomplice testimony, we will address the points together.

Police were called to the Christi Estates Apartments when a maintenance man saw two black males removing a refrigerator from the property. The maintenance man saw the men for only four to five seconds and did not get a look at their faces. He did see the car they were driving, and described it to the investigating officer as a maroon Monte Carlo. The officer broadcast a description of the car and its occupants.

A couple of hours after the burglary, a patrol unit spotted a red Grand Prix with two black male occupants. A refrigerator was conspicuously protruding from the trunk. Before the officer could signal the car Grand Prix to stop, it stopped on its own in front of a house on Seville Street. A man from the house approached the car. Officer Shelton pulled his vehicle behind the car, and he and his passenger, an Explorer Scout, Gavriel Trevino, approached the car.

The occupants were told to put their hands on the car. As Trevino was placing handcuffs on one of the occupants, the other occupant ran. Officer Shelton pursued the man, but abandoned his pursuit when he realized the unarmed Explorer Scout was alone with the detained suspect, Eric Harris.

Harris was placed in the patrol car. Officer Shelton spoke with the man who had come from the house. He told Shelton that the escaped suspect was Elroy Chandler, the appellant.

As Shelton and Trevino began transporting Harris to jail, Harris directed their attention to a man riding a bicycle. Harris said that the cyclist was the man who had fled. The cyclist was stopped about two houses away from where the initial arrest had occurred.

Shelton asked the bicyclist his name. He told the officer a name other than Elroy Chandler. The cyclist was wearing different clothes than the person who had fled, but his appearance closely matched. When Shelton asked Harris if this was the person who had fled, Harris would not speak.

Shelton decided not to arrest this person because his clothing was different and because Harris refused to identify him. Later investigation showed that the man on the bicycle was Elroy Chandler.

Officer Shelton could not identify appellant as the man who had escaped while being arrested, but he could identify appellant as the man on the bicycle who gave a false name.

Ten days after the burglary, Sergeant Robert McDonald showed Gavriel Trevino a display with six photographs and asked if he could identify the person who ran. The display contained full-face photographs of six black males. The photographs were not in color. Trevino identified appellant's photograph immediately.

Thereafter, appellant filed a motion to suppress Trevino's identification of him, alleging that the photographic spread was suggestive, because appellant had green eyes, and only one of the photographs depicted a person with green eyes. The trial court heard evidence on the identification procedures and overruled appellant's objection. The photographic spread is included in the appellate record for our review and consists of six photographs of black males.

At the suppression hearing, Trevino testified that he had "a minute, maybe two" to view the person who fled from a distance of about four feet. Trevino testified, "I saw him vaguely at the scene and so I was

able to identify him vaguely," and that he selected appellant's photograph because, "His eyes came out to me," and that he "didn't have to think about it."

Trevino admitted that when he and Officer Shelton encountered appellant on the bicycle, he was not sure that appellant and the man who fled were the same person, because appellant was wearing different clothing.

Trevino further testified that "[Appellant's eyes] stuck out at the scene. I heard that he had green eyes at the scene, also, but I noticed them the second that we observed the said subject on the bicycle. He had green eyes so I kind of just—they did look familiar except that he had different clothes on. He was on a bicycle." Trevino further testified that he picked out appellant's photo because of "his looks and his eyes," and that he "facially looked like the same subject."

When asked why appellant was not arrested when stopped on his bicycle, Trevino testified that the man had different clothing "and we just weren't absolutely sure" and, "he was on a bike and we didn't know where he could have gotten the bike or changed clothes."

Sergeant McDonald testified that he showed Trevino a photo display which he had assembled by going through mug shots which were on file in the Corpus Christi Police Department. He attempted to find five or six which resembled appellant's. He admitted that he had a limited number of photographs and that, "This [was] the best lineup I could come up with." McDonald also admitted that despite the photographs being in black and white, the appellant's eyes were "a little bit different."

McDonald testified that Trevino was able to identify appellant's photograph "right away."

Appellant argues that the photographic array was so suggestive that it tainted Trevino's in-court identification of appellant because it contained only one photo of a black male with distinctive looking green eyes.

In several cases, Texas Courts have addressed the same issue in different contexts. In *Turner v. State*, 600 S.W.2d 927 (Tex.Crim.App.1973), the only two other individuals, with a beard in the five person lineup, were not physically close to the defendant in size and hair color. In *Glover v. State*, 470 S.W.2d 688 (Tex.Crim.App. 1971), the defendant was the only blond, or the blondest, person in the photographic array. In *Ward v. State*, 474 S.W.2d 471 (Tex.Crim.App.1972), the defendant's photograph was the only one depicting a person with an Afro hair style. In *Mallard v. State*, 661 S.W.2d 268 (Tex.App.—Fort Worth 1983, no pet.), all five participants in the lineup were black, but only the defendant had obvious facial hair. In *Jordan v. State*, 495 S.W.2d 949 (Tex.Crim.App.1973), only one other person in the lineup was the defendant's size. In none of these cases were the identification procedures found to be impermissibly suggestive.

While it might be better practice to utilize those persons in a lineup with features matching the accused, that is not always practical, and neither due process nor common sense requires such a procedure. *Turner v. State*, 600 S.W.2d 927 (Tex.Crim.App.1980).

In reviewing appellant's contention, the standard is whether the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). *See Garza v. State*, 633 S.W.2d 508 (Tex.Crim. App.1982). This determination is made from reviewing the totality of the circumstances. *Jackson v. State*, 657 S.W.2d 123, 127 (Tex.Crim.App.1983). Even a suggestive procedure will not invalidate an identification if the identification is reliable. *Jackson*, 657 S.W.2d at 127.

We disagree with appellant that the photograph array is impermissibly suggestive. The photographs are in black and white, and while four of the six suspects pictured have dark colored eyes, the array cannot be said to be so suggestive that it would lead

to irreparable misidentification. Appellant's third point of error is overruled.

■ Appellant also challenges the sufficiency of the evidence corroborating the testimony of Eric Harris, the accomplice. Harris testified that on the day of the burglary he was driving his mother's car on Greenwood Street when appellant flagged him down. Appellant, whom Harris had known for years, said he needed to move a refrigerator which was located at the Christi Estate Apartments.

They went to the apartment complex. Harris did not see how appellant got into the apartment. Harris went in through the front door. They loaded the refrigerator into his car and took it to a house on Archdale Street. The refrigerator remained there until Charles Reese, Harris' friend, agreed to buy it. Reese, appellant, and Harris then took the refrigerator to Reese's house on Seville Street. They had just parked when the police pulled up.

After talking to the officers a while, appellant ran. According to Harris, as the police were "fixing to drive" him downtown, he saw appellant on a bicycle driving back to the scene. Harris told the officers four or five times that the person on the bike was the person who had fled, but they would not arrest him.

In Texas, the testimony of an accomplice witness will not support a conviction unless it is corroborated by "other evidence tending to connect the defendant with the offense committed." Tex.Code Crim.Proc. Ann. art. 38.14 (Vernon 1966).

As stated in *Paulus v. State,* 633 S.W.2d 827 (Tex.Crim.App.1982):

As noted earlier, all the facts and circumstances in evidence may be looked to as furnishing the corroboration necessary. The corroborative evidence may be circumstantial or direct. Apparently insignificant circumstances sometimes afford the most satisfactory evidence of guilt and corroboration of the accomplice witness testimony. It is not necessary that the corroboration directly link the accused to the crime or be sufficient in itself to establish guilt. The combined cumulative weight of the incriminating evidence furnished by the non-accomplice witnesses which tends to connect the accused with the commission of the offense supplies the test. Each case must be considered on its own facts and circumstances and on its own merits.

*Paulus v. State,* 633 S.W.2d at 846. *See Gamez v. State,* 737 S.W.2d 315 (Tex.Crim. App.1987).

In the present case, the person who was with Harris in the car containing the stolen property fled when approached by the police. Flight is sufficient to corroborate an accomplice's testimony. *Cawley v. State,* 310 S.W.2d 340 (Tex.Crim.App.1957).

Gavriel Trevino's testimony is sufficient to establish that appellant was the person who fled and accordingly is sufficient to corroborate the accomplice. In addition, Officer Shelton testified, without objection, that Charles Reese, the man at the house where the suspect's car was stopped, told him that the man who ran was Elroy Chandler, the appellant, and that Chandler had tried to sell him a refrigerator.

Terry Davis testified that appellant came to his house on the evening of the burglary and said he needed a change of clothes. Appellant stayed only about five minutes. This action is a circumstance showing appellant's desire to disguise his identity and conceal his participation in the offense. Furthermore, when appellant was stopped on the bicycle, he gave the officer a false name.

All of these circumstances together are sufficient to connect appellant to the commission of the offense and provide sufficient corroboration of the accomplice testimony. Appellant's second point of error is overruled.

■ In his last point of error, appellant contends that the court erred in overruling his motion for new trial on account of jury misconduct. At the new-trial hearing, a juror testified that she did not understand that she could maintain her "not guilty" vote and yielded to the will of the majority. No one forced the juror to change her vote, but she felt that the other jurors exerted pressure on her to reach a unanimous ver-

dict. We recently and thoroughly addressed the same issue in *Garza v. State*, 695 S.W.2d 58 (Tex.App.—Corpus Christi 1985, no pet.) In short, a juror's complaint that a verdict was forced upon him by the other jurors is an improper attempt to impeach a jury's verdict. *Garza*, 695 S.W.2d at 60. The trial court did not abuse its discretion in denying appellant a new trial on this basis. Appellant's fourth point of error is overruled.

Because we sustained appellant's first point, the judgment of the trial court is reversed, and the cause is remanded for the entry of acquittal.

NYE, C.J., concurs.

KENNEDY, J., dissents.

NYE, Chief Justice, concurring.

I respectfully concur in the result reached by the majority opinion.

The appellant was indicted for burglary of a habitation with the intent to commit theft. After the state presented its evidence, the defense sought an instructed verdict on the ground that there was no evidence that the structure involved in the offense was a "habitation" as defined in the Texas Penal Code.

The jury was charged with the offense of burglary of a habitation and the lesser included offense of burglary of a building. Appellant objected to the burglary of a habitation charge.

During jury deliberations the jury sent a note to the judge requesting a more specific definition of "habitation" and "building." Before the jury received a response to their question, the jury found appellant guilty of the offense of burglary of a habitation. The judge sentenced the defendant to sixteen years of confinement.

Burglary of a habitation is a first degree felony with a punishment range of 5–99 years and a maximum $10,000.00 fine. Burglary of a building is a second degree felony with a range of 2–20 years and a maximum $10,000.00 fine. In this case, a prior felony was alleged for enhancement purposes which affected the punishment range as follows: If appellant was guilty of burglary of a habitation: 15–99 years or life; if appellant was guilty of burglary of a building: 5–99 years and a $10,000.00 fine.

The majority opinion holds that there was insufficient evidence for the jury to find that the structure involved in the alleged burglary was a "habitation." There was evidence that the structure was unleased and vacant at the time of the offense. On the other hand, the record shows that the apartment contained built-in appliances—a dishwasher, stove, disposal, lighting fixtures, hot water heater, and carpet. In addition, there was a refrigerator. The water and electricity were turned on and the air conditioning was hooked up. The apartment had been previously rented, but had been vacant prior to the offense for about 35 days. The occupancy rate of the apartment complex was approximately 65%.

A habitation in the Penal Code is defined as "a structure adapted for the overnight accommodation of persons" and includes: "(a) each separately secured or occupied portion of the structure." The majority opinion states that the apartment, rather than being a habitation, was a "building." A "building" is defined as "any enclosed structure intended for use ... as a habitation." In light of the *case law* dealing with this issue, I must concur with the result of an acquittal of appellant, although a liberal interpretation of the legislative definition would make this "structure" a habitation.

In *Jones v. State*, 532 S.W.2d 596, 600 (Tex.Crim.App.1976), the court set forth a test, albeit an amorphous one, to apply in determining whether a structure is a habitation. The court held that the structure "must at the time of the alleged offense have been actually 'adapted for the overnight accommodation of persons' or at least at some prior time used for the overnight accommodation of persons and still 'adapted for the overnight accommodations' of persons." The court rationalized this interpretation of the statute with two theories.

First, the court stated *that the traditional purpose for holding that a burglar of a habitation should receive a higher penalty than a burglar of a building is to protect private homes;*[1] therefore, the term "adapted" should be construed in a manner consistent with this policy. The general use of the term "adapted" which was "capable of use" or "made suitable" was too broad. "Considering the background of the statute, we cannot conclude the legislature intended . . . to make a 'habitation' out of every structure or vehicle that could be converted in the future into overnight accommodation of persons or was 'capable of use as such.'" *Jones*, 532 S.W.2d at 600.

Second, the court was attempting to harmonize the definition of "habitation" with the definition of the term "building." The court reasoned that since the definition of "building" was a structure *intended* for use as a "habitation," then naturally "habitation" could not have the same meaning. Therefore a habitation had to be *more than* just a place capable of being used as an overnight accommodation or intended to be used as an overnight accommodation. The court's approach for determining whether a structure is "adapted for the overnight accommodations of persons" is to look for indications of overnight occupancy: 1) the availability of utilities 2) furniture 3) household goods within the apartment, and 4) prior use.

In *Jones*, the court held that the vacant, newly built house was not a habitation within the meaning of the Penal Code. In *Moss v. State*, 574 S.W.2d 542 (Tex.Crim. App.1978), the court held that an unoccupied rent house which had electricity but no water connected and which had furniture stored in it (including a mattress and box springs) was not a habitation. On the other hand, in *Hargett v. State*, 534 S.W.2d 909 (Tex.Crim.App.1976), the court held that a rent house that was rented complete with furniture and where the tenant had begun to move in his personal belongings was a habitation.

Courts of Appeals decisions have tended to follow the same analysis and compared their fact situations with these cases to determine whether or not sufficient evidence existed for the structure to be a habitation, but not always with uniform results. For instance, in *Trotter v. State*, 623 S.W.2d 504 (Tex.App.—Fort Worth 1981, no pet.), a mobile home which had furniture and household items with utilities available, but where the sewage line was not connected, was held to be a habitation. No one lived in the mobile home at the time of the offense, but it had formerly been occupied. In contrast, in *Myers v. State*, 704 S.W.2d 446 (Tex.App.—Houston [14th Dist.] 1986, pet. ref'd), with similar facts, its defendant was convicted of burglary of a building. On appeal he argued that the evidence was insufficient to show the structure was a building; rather the evidence showed it was a habitation. The structure was a trailer which had a refrigerator, built-in appliances, a bed, and household items. The trailer was occasionally used as a hunting camp. The court held that clearly the structure was a building. In addition, the court said that even if the evidence also proved burglary of a habitation it would not create a fatal variance. In *Bazroux v. State*, 634 S.W.2d 919 (Tex. App.—Houston [1st Dist.] 1982, no pet.), where a house had furniture, household items, electricity operating, and where the owner was out of the country, at least temporarily, the court found the structure to be a habitation. In *Lewis v. State*, 631 S.W.2d 813 (Tex.App.—Fort Worth 1982, no pet.) the court held a one bedroom apartment was a habitation. The only evidence the court mentioned regarding the interior of the structure was that it had a portable radio, T.V. and microwave oven.

The Texarkana Court of Appeals has rejected the approach of looking at the contents of the structure. *Blankenship v. State*, 715 S.W.2d 132 (Tex.App.—Texarkana 1986, pet. granted). In *Blankenship*, the structure was a rent home which had previously been lived in, but which was unoccupied at the time of the offense. It

---

**1.** Emphasis supplied throughout.

was wired for electricity and had water connections. In *Blankenship* the court said, "[W]e do not feel that whether a structure is a habitation should depend on how much or what kind of furniture a building contains, or by whether the utilities are connected. A finished structure designed for, built as, and intended as a place for people to live is logically a habitation." While this reasoning is logical, it refers to the common dictionary meaning of the term habitation and fails to deal with the statutory definition of habitation, and the complexities wrought by the statute and case law.

Using the traditional approach of comparing the facts to the cases decided by the Court of Criminal Appeals, it appears that the facts in this particular case are more similar to the *Moss* and *Jones* cases than to the *Hargett* case. Here the apartment was unrented, and the furnishings were the refrigerator and built-in appliances. There was no furniture, and there were no household items, although the electricity had been turned on, and the apartment was ready for occupancy.

The majority opinion states that the vacant apartment is not a habitation because "no reasonable person would find an unfurnished apartment fit for overnight accommodation." But should this really be the test? Since the rationale for providing an increased penalty for burglary of a habitation is to protect private residences, the most effective approach would be to consider whether the structure is one that is normally expected to be a private residence.

There is a substantial need to reform this area of the law and for the legislature to clarify the meaning of the terms "building" and "habitation." Since the legislature has created two separate offenses, the distinction between the two offenses should be clear and certain.

The Court of Criminal Appeals has said that it is not enough for the structure to be *capable of use* as an overnight accommodation. A certain combination of factors make the structure "adapted for overnight accommodations." But the appellate

courts, the trial courts, the grand juries, prosecutors and juries face a dilemma in determining what combination is the correct one.

The rationale for providing an increased penalty for burglary of a habitation is to safeguard one's home—to protect against intrusion into those places where the threat to people is most alarming. There is a special danger associated with an intruder in a home—the danger that the intruder will harm the occupants or that the occupants will react violently to the trespass into their personal haven. The increased penalty is to further the intent of society to ensure that burglars stay out of inhabited homes.

It is difficult to perceive how these goals can be attained with the current state of the law. How can the law deter a criminal from entering a private residence when the criminal will not know, until after he enters the structure, whether it is a habitation or a building? Does the criminal who enters an apartment for the purpose of burglarizing the place consider the place a habitation or a building just prior to the entry in making his decision to commit the crime? A subjective test which is hypertechnical like the one set forth by the Court of Criminal Appeals seems merely to muddle the issue.

Although no further prosecution of the appellant for burglary of a habitation shall be had, it should be noted that the appellant may be indicted and tried for the lesser included offense of burglary of a building. There is a line of cases which hold that if the courts have found the evidence insufficient on an alleged aggravating element, a trial on the lesser included offense is not precluded. *See: Moss v. State*, 574 S.W.2d 542 (Tex.Crim.App.1978); *Granger v. State*, 605 S.W.2d 602, 604 (Tex.Crim. App.1980); *Ex Parte Harris*, 600 S.W.2d 791, 792 (Tex.Crim.App.1980); *Keith v. State*, 692 S.W.2d 921 (Tex.App.—Houston [14th Dist.] 1985) pet. ref'd. 721 S.W.2d 294 (Tex.Crim.App.1986); *Cruz v. State*, 629 S.W.2d 852, 860 (Tex.App.—Corpus Christi 1982, pet. ref'd); *Scott v. State*, 712 S.W.2d 782, 783 (Tex.App.—Houston [1st Dist.]

1986, *affirmed* 741 S.W.2d 435 (Tex.Crim. App.1987).

I concur with the result.

KENNEDY, Judge, dissenting.

I respectfully dissent. While I agree with the majority's reasoning and holdings with regard to points of error two and three, I disagree with their holding that the structure burglarized, an unrented apartment, was not a habitation (point of error number 1). The majority in its opinion cites *Jones v. State,* 532 S.W.2d 596 (Tex. Crim.App.1976), wherein a new house, never occupied was held not to be a habitation but which holding, quoted by the majority, defines a habitation as a "structure ... actually adapted for the overnight accommodation of persons or at least at *some prior time* used for the overnight accommodation of persons and still adapted for the overnight accommodation of persons." (emphasis added) The *prior time* position of the holding is squarely on point with the case before us since the apartment in our case had been rented many times before.

Other cases cited by the majority, *Hargett, Lewis, Bazroux,* and *Blankenship,* I read to support the overruling of Appellant's first point of error. *Moss v. State,* 574 S.W.2d 542 (Tex.Crim.App.1978), also cited by the majority, admittedly appears to support a holding that a house formally rented but not rented at the time of the burglary is not a habitation. However, the evidence in *Moss* indicates that the house was being used as a storeroom for furniture and thus was not then adapted for the overnight accommodations of persons.

For the reasons stated, I would affirm the conviction for burglary of a habitation.