Affirmed and Memorandum Opinion filed October 26, 2006








Affirmed and Memorandum Opinion filed October 26, 2006.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00543-CR

____________

 

JASON WILLIAM LAWRENCE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 232nd
District Court

Harris County, Texas

Trial Court Cause No. 1025883

 



 

M E M O R A N D U M   O P I N I O N

Jason William Lawrence, appellant, seeks reversal of  his
conviction for injury to a child.  In his first two issues, appellant contends
the trial court erred by improperly discharging a juror and overruling his
motion for new trial.  In his remaining four issues, appellant contends the
evidence is legally and factually insufficient to support his conviction. 
Because all dispositive issues are clearly settled in law, we issue this
memorandum opinion and affirm.  See Tex. R. App. P. 47.4.








I.  Background 

Houston police officer Steven Januhowski and two other
officers went to a motel room registered under appellant=s name to execute
an outstanding arrest warrant for misdemeanor theft.  The officers knocked on
the door, and appellant came to the window and peered outside.  Appellant
retreated into the interior of the motel room out of the officers= view for
approximately two and a half minutes.  Appellant then answered the door
carrying a small child.  According to Officer Januhowski, appellant told the
officers there was no one else in the room.  Officer Januhowski entered the
room to investigate a noise he heard coming from the bathroom and discovered
the seven-month-old complainant in the bathtub sitting in a car seat hidden
behind the shower curtain.  Officer Januhowski observed what appeared to be
burn injuries on the baby.  The baby was transported to a hospital by
ambulance, where a medical examination revealed a third-degree burn on the baby=s hand.  The baby
also suffered from what appeared to be a cigarette burn on his testicle and
burns of an unknown source on his face and nose. 

A jury found appellant guilty of injury to a child and
assessed punishment at 25 years= confinement. 

II.  Disabled Juror








In his first issue, appellant contends the trial court
erred in discharging a juror and proceeding to trial with an eleven-person
jury.  The trial court declared a juror disabled and excused him from further
service because the juror disclosed that he had been diagnosed with liver
disease two weeks prior to trial and had medical appointments scheduled during
the week of trial.  When asked whether he would be able to uphold his oath, the
juror stated, AI don=t believe I=ll be able to
because I believe my mind will be otherwise occupied.@  The juror also
informed the trial court that he Ajust can=t serve right now
and be expected to pay full attention,@ and stated he
would be unable to separate his anxieties and concerns regarding his recent
medical diagnosis.  At trial, appellant agreed that the juror could not be
fair, stating, Athe Defense is of the opinion that based
on the information that we were given he=s not going to be
a fair juror.@  Appellant requested that the trial court permit
another juror to be chosen, either from the remaining veniremembers, or from a
separate smaller group of veniremembers empaneled for the sole purpose of
filling the remaining seat on the jury.  The trial court understood that
neither procedure was permitted and decided to proceed to trial with an
eleven-person jury.  Appellant moved for a mistrial as follows:

We feel that no testimony has been
given yet and at this time we would like our client to be judged by 12 instead
of 11 because there=s been no prejudice right now as far as
any witnesses and we feel that we would prefer to have a 12 member panel and so
we request a mistrial.

On appeal, appellant contends the record fails to show the
juror was so impaired by his medical condition that he could not fully and
fairly perform his responsibilities as a juror.  Appellant=s issue on appeal
does not comport with his objection at trial.  Therefore, appellant has waived
error.  See Guidry v. State, 9 S.W.3d 133, 152 (Tex. Crim. App. 1999); Tex.R.App. P. 33.1(a)(1).

Even if appellant preserved error, we find the trial court
did not abuse its discretion by proceeding to trial with an eleven-person
jury.  Generally,
not less than twelve jurors can render and return a verdict in a felony case.  See
Tex. Code Crim. Proc. Ann. art.
36.29(a) (Vernon 2006).  However, if one juror dies or becomes disabled from
sitting before the charge of the court is read to the jury, the remainder of
the jury has the power to render the verdict.  Id. ADisabled from
sitting@ means Aphysical illness,
mental condition, or emotional state which hinders one=s ability to
perform one=s duties as a juror,@ or Aany condition that
inhibits the juror from fully and fairly performing the functions of a juror.@  Ramos v.
State, 934 S.W.2d 358, 369 (Tex. Crim. App. 1996), cert. denied, 520
U.S. 1198 (1997).  We review the trial court=s determination as
to whether a juror is disabled for abuse of discretion.  Brooks v. State,
990 S.W.2d 278, 286 (Tex. Crim. App. 1999).








A juror=s disability is not limited to physical
disease, but also includes any mental condition or emotional state that
inhibits the juror from fully and fairly performing the function of a juror.  Reyes
v. State, 30 S.W.3d 409, 411 (Tex. Crim. App. 2000).  Lacking the
ability to concentrate due to emotional stress caused by a death in the family,
a family illness, or time pressures of a new job have been held examples of
such disabling conditions.  Ramos, 934 S.W.2d at 369.  Here, the trial
court could have reasonably determined the juror=s anxieties
surrounding his recent diagnosis and upcoming medical tests would inhibit him
from fully and fairly performing his responsibilities as a juror.  Accordingly,
we conclude the trial court did not abuse its discretion by finding the juror disabled
and proceeding with an eleven-person jury.  See Moffett v. State,
949 S.W.2d 778, 783 (Tex. App.CBeaumont 1997, pet. ref=d) (finding no
abuse of discretion when juror had been up all night due to family problems and
could not concentrate on the trial); State v. Balderas, 915 S.W.2d 913,
917 (Tex. App.CHouston [1st Dist.] 1996, pet. ref=d) (finding no
abuse of discretion when juror had a medical appointment for back surgery).  We
overrule appellant=s first issue. 

II.  Jury Misconduct

In his second issue, appellant contends the trial court
erred in overruling his motion for new trial without a hearing.  Appellant
filed a motion for new trial on the basis of jury misconduct.  Appellant=s motion for new
trial was supported by an affidavit from his defense counsel.  The affidavit
revealed that one day before the jury began punishment deliberations,  a juror=s wife received a
collect telephone call originating from the jail.  After the verdict on
punishment, appellant=s trial counsel interviewed the juror, who
related the story of the phone call to trial counsel.  In her affidavit,
appellant=s counsel states, AAt the time I
spoke with [the juror], it was clear from the reaction of the other jurors that
they had already heard about the jail call.@  No affidavit
from any of the jurors was attached to the motion for new trial.








We review the trial court=s decision to
grant or deny a motion for new trial under an abuse of discretion standard.  Salazar
v. State, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001).  We must not
substitute our judgment for that of the trial court; rather, we review the
trial court=s decision to determine whether it was unreasonable or
arbitrary.  Id.   

Rule 21.3(f) of the Texas Rules of Appellate Procedure
provides that in a criminal case, a defendant must be granted a new trial when,
after retiring to deliberate, the jury has received other evidence, or when a
juror has talked with anyone about the case.  To prove the jury received other
evidence for purposes of Rule 21.3(f), appellant is limited by Rule 606(b) of
the Rules of Evidence.  See Garza v. State, 82 S.W.3d 791, 794 (Tex.
App.CCorpus Christi 2002,
no pet.).  Rule 606(b) permits a juror to testify about outside influence, but
a juror may not testify as to any matter or statement occurring during the jury=s deliberations,
or to the effect of anything on any juror=s mind or emotions
or mental processes, as influencing any juror=s assent to or
dissent from the verdict or indictment.  Tex.
R. Evid. 606(b).  Information gathered by a juror that is shared with
the other jurors does not constitute outside influence, even if it is shared
specifically to influence the other jurors= votes.  Garza,
82 S.W.3d at 794.  Even a juror=s injection of his own personal
experiences, knowledge, or expertise will not be considered an outside
influence because it emanates from inside the jury.  Franks v. State, 90
S.W.3d 771, 800 (Tex. App.CFort Worth 2002, pet. ref=d).








Because the affidavit signed by appellant=s counsel does not
contain averments constituting outside influence, it is insufficient to raise
the issue of jury misconduct under Rule 21.3(f).  The current version of Rule
606(b) became effective March 1, 1998, with the adoption of the consolidated
rules of evidence.  The rule represents a significant departure from previous Texas
criminal practice. Former Rule of Criminal Evidence 606(b) permitted jurors to
testify as to anything relevant to the validity of a verdict or indictment; the
former rule thus placed no independent limitation on a juror=s ability to
testify.  See Buentello v. State, 826 S.W.2d 610, 612 (Tex. Crim. App.
1992).  Current Rule of Evidence 606(b) dramatically restricts a juror=s testimony.  The
rule in criminal cases is now the same as in civil cases: Jurors may testify
regarding whether any outside influence was improperly brought to bear upon a
juror or to rebut a claim that a juror is not qualified to serve.  Hicks v.
State, 15 S.W.3d 626, 630 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d).

Here, because the source of any allegedly improper
information was the juror, the trial court could have determined there were no
reasonable grounds to believe outside influence was improperly brought to bear
upon the jury.  See Hines v. State, 3 S.W.3d 618, 621 (Tex. App.CTexarkana 1999,
pet. ref=d).  Accordingly,
the trial court did not abuse its discretion by overruling appellant=s motion for new
trial without a hearing.  Appellant=s second issue is
overruled. 

III.  Sufficiency of the Evidence

In his third and fourth issues, appellant contends the
evidence is legally and factually insufficient to show that he caused injury by
placing the complainant=s hand into hot water or holding the
complainant=s hand against something very hot.  A person commits
the offense of injury to a child if he intentionally or knowingly, by act or
omission, causes serious bodily injury to a child.  See Tex. Penal Code Ann. _ 22.04(a)(1)
(Vernon 2003).

A.      Standard
of Review

In reviewing the record for legal sufficiency, we must view
all the evidence in the light most favorable to the verdict in order to
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319 (1979); Vodochodsky v. State, 158 S.W.3d 502, 509
(Tex. Crim. App. 2005).  We must resolve any inconsistencies in the testimony
in favor of the verdict.  Moreno v. State, 755 S.W.2d 866, 867 (Tex.
Crim. App. 1988).  








In reviewing the evidence for factual sufficiency, we must
view all of the evidence in a neutral light, and must set aside the verdict
only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. Clewis v. State, 922 S.W.2d 126, 129 (Tex.
Crim. App. 1996).  Evidence may be factually insufficient if (1) the evidence
supporting the verdict alone is too weak to justify a finding of guilt beyond a
reasonable doubt, or (2) the contrary evidence is so strong that it would
prevent a reasonable jury from finding guilt beyond a reasonable doubt.  Zuniga
v. State, 144 S.W.3d 477, 484B85 (Tex. Crim.
App. 2004).

B.      Corroboration
of Accomplice Witness

Appellant argues the evidence is legally and factually
insufficient to corroborate the testimony of the baby=s mother that
appellant caused the baby=s hand injury.  The baby=s mother pleaded
guilty to the offense of injury to a child, and the trial court instructed the
jury that she was an accomplice witness as a matter of law.  A conviction
cannot rest on the testimony of an accomplice unless the testimony is
corroborated by other evidence tending to connect the defendant with the
offense.  See Tex. Crim. Proc.
Code Ann. art. 38.14 (Vernon 2005).  The test for sufficient
corroboration is to eliminate from consideration the accomplice testimony and
ascertain whether the remaining evidence tends to connect the defendant with
the offense.  See McDuff v. State, 939 S.W.2d 607, 612 (Tex.
Crim. App. 1997).  








The baby=s mother testified that she and appellant
had been living in motels near her place of employment.  She worked as an
exotic dancer, and appellant took care of her children while she worked. 
Appellant called her at work when the baby received the injury to his hand. 
Appellant told her that the baby appeared a little red after getting out of the
shower.  Because appellant described the injury as a rash, she instructed
appellant to treat the injury with ointment.  Appellant called her back later
and told her the ointment appeared to be making it worse.  When she arrived
home and saw the baby=s injury, she believed it was a burn.  She
asked appellant if he thought the water was too hot, and appellant became angry
at the accusation.  She did not want to take the baby to the hospital because
she was afraid that someone from Child Protective Services (CPS) would take the
baby away from her.  She called a pharmacy and described the baby=s injury as
similar in appearance to a sunburn.  The pharmacist told her there was no
reason to take the baby to the hospital.  She and appellant treated the baby=s injury with
hydrogen peroxide or rubbing alcohol and antibiotic ointment.  She also used a
spray on bandage, but the baby cried when she tried to remove the bandage.

In corroboration of the mother=s testimony, the
State offered the testimony of Officer Januhowski, the arresting officer, Julia
Caesar, the CPS case worker, the baby=s foster mother,
and Dr. Larry Hollier, a pediatric plastic surgeon.  

Officer Januhowski testified that appellant denied anyone
else was present when he entered the motel room to execute an arrest warrant. 
Januhowski heard a noise from the bathroom, pushed the door open, and found the
baby sitting in a car seat in the bathtub behind a closed shower curtain. 
Januhowski testified that the baby had a swollen, deep red injury to his hand
and appeared to be in pain.

Julia Caesar, the CPS case worker, testified the baby had a
burn mark on his nose, a severe case of cradle cap, a cigarette burn on his
testicle, and an infected burn on his hand.  She further testified the baby
appeared to be withdrawn, malnourished and underweight.  The baby=s mother worked Aa lot of hours,@ and appellant was
the primary caregiver.  When appellant attended supervised visits, the baby
appeared to be afraid and would jerk away when appellant tried to touch him.

The baby=s foster mother testified to the extent of
the baby=s injuries after
he began to live with her.  When she changed the bandage on his hand, she
observed his fingers were enlarged and misshapen.  It appeared the baby had
been left in one position for extended amounts of time because his head was
misshapen.  She testified the baby=s greatest fear
was bath water.  When she ran the bath water, the baby would become Ahysterical,@ and it took a
long time to gain his trust. 








Dr. Hollier testified the baby suffered a third-degree burn
on his hand.  He testified the injury was not an accident because a child will
not expose his hand to a heat source long enough to cause such a severe burn. 
Dr. Hollier testified that the burn was the most severe hand burn he had seen
in his experience as a pediatric plastic surgeon.  He believed the burn was
most likely caused by someone holding the baby=s hand in hot
water for approximately five to ten seconds.  He ruled out other possible
causes, including previously existing infection.  He testified that the baby
would likely need to undergo additional surgeries, and the injury would cause
protracted loss or permanent disfigurement.  Treating the burn with hydrogen
peroxide or rubbing alcohol, as appellant described, likely aggravated the injury
and delayed healing.

Appellant testified that he was the baby=s primary
caretaker.  He awoke one morning and the baby had a soiled diaper.  To clean
the baby, appellant took a shower with him, put on a fresh diaper, and went
back to sleep.  Two hours later, appellant awoke and noticed the baby=s face and hand
were pink.  Appellant called the baby=s mother and
described his skin condition, and she instructed him to put ointment on the
baby=s skin.  The
ointment did not seem to help, so appellant cleaned it from the baby=s hand and called
a pharmacist.  The pharmacist recommended an antibiotic ointment.  After two
days, appellant testified the hand injury worsened and appellant suggested to
the baby=s mother that she
take him to the hospital.  The mother did not want to take the baby to the
hospital because she feared CPS would take the baby.  Appellant claimed he did
not know he could take the baby to the hospital without the mother=s permission. 
Appellant denied immersing the baby=s hand in hot
water.  Appellant admitted he and the baby=s mother Ajumped bond@ for approximately
two months.

Appellant=s mother and step-father also testified
for appellant.  Appellant=s mother testified that appellant was good
with the baby.  Appellant=s step-father testified that he never
witnessed appellant exhibit violence toward a child.








Reviewing the evidence in the light most favorable to the
verdict, we find a rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.  The mother=s testimony was
corroborated by evidence that appellant was alone with the baby when the injury
happened, the injury could not have been accidental, and appellant attempted to
flee after being released on bond.  See Hernandez v. State, 939 S.W.2d 173,
178 (Tex. Crim. App. 1997) (holding that evidence of flight and guilty demeanor
coupled with other corroborating circumstances may tend to connect a defendant
with the crime).  

Further, reviewing the evidence in a neutral light, we find
the evidence supporting the verdict is not so weak to justify a finding of
guilt beyond a reasonable doubt or that the contrary evidence is so strong that
it would prevent a reasonable jury from finding guilt beyond a reasonable
doubt.  We overrule appellant=s third and fourth issues.

C.        Injury by Omission

In his fifth and sixth issues, appellant argues the
evidence is legally and factually insufficient to show he caused serious bodily
injury to a child by omission.  Specifically, appellant argues there is
insufficient evidence to show he assumed care, custody, or control of the
complainant.  An omission is conduct constituting an offense if the actor has assumed
care, custody, or control of a child.  See Tex. Penal Code Ann. _ 22.04(b)(2) (Vernon 2003).  Here,
police found the baby in the bathroom of a motel room registered under
appellant=s name.  Appellant was the only adult present in the
room.  Appellant admitted he was the primary caretaker for the baby and
admitted placing the baby in a shower a few hours before he noticed the injury
to the baby=s hand.  Appellant further admitted he did not seek
medical care for the baby beyond phoning a pharmacist.  Viewing the evidence in
the light most favorable to the verdict, we conclude the evidence is legally
sufficient to show appellant assumed care, custody, or control of the
complainant.








Appellant emphasizes his testimony that he did not think he
could seek medical care for the complainant because he thought a parent had to
be present.  Appellant also testified, however, that he recognized the hand did
not improve after two days of home treatment and that the baby should see a
doctor.  He testified that the mother=s fear of CPS
prevented him from seeking medical care.  Viewing all the evidence in a neutral
light, we conclude the evidence supporting the verdict is not too weak to
support a finding of guilt beyond a reasonable doubt, and the contrary evidence
is not so strong that it would prevent a reasonable jury from finding guilty
beyond a reasonable doubt.  We overrule appellant=s fifth and sixth
issues.

The judgment of the trial court is affirmed.

 

 

 

 

/s/      Charles Seymore

Justice

 

 

Judgment rendered
and Memorandum Opinion filed October 26, 2006.

Panel consists of
Justices Hudson, Fowler, and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).