Malcolm C. MOFFETT, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–96–017 CR.

Court of Appeals of Texas,
Beaumont.

Submitted May 1, 1997.

Decided July 9, 1997.

Stephen C. Taylor, Galveston, for appellant.

Latham Boone, Special Prosecution Unit, Huntsville, for state.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

BURGESS, Justice.

A jury convicted Malcolm C. Moffett of murdering another prison inmate. The trial

court found the indictment's enhancement allegations to be true and assessed punishment at twenty-five years' confinement in the Texas Department of Criminal Justice—Institutional Division. The judge ordered the sentence to be served consecutively to the twelve year burglary sentence appellant was serving when the murder was committed. Moffett raises seven points of error.

Moffett argues his first two points of error together:

### Point of Error One

The jury was not authorized to convict appellant of the offense of murder, in that the application paragraph contained with the trial court's charge authorizing the jury to convict appellant of the offense of murder was legally insufficient to support a conviction for the offense of murder, in that the application paragraph failed to incorporate the allegation that appellant committed the offense of murder "on or about August 5, 1994," as alleged in the indictment.

### Point of Error Two

The jury was not authorized to convict appellant of the offense of murder, in that the application paragraph contained with the trial court's charge authorizing the jury to convict appellant of the offense of murder was legally insufficient to support a conviction for the offense of murder, in that the application paragraph failed to incorporate the allegation that appellant committed the offense of murder "in Polk County, Texas," as alleged in the indictment.

The indictment alleged both the county and date of offense, as did the application paragraph of the charge on the lesser included offense, but the application paragraph of the charge on murder omitted the date and county. The statutory elements of an offense must be set out either in the application paragraph or in the definitional portion of the charge. *See Lewis v. State*, 656 S.W.2d 472 (Tex.Crim.App.1983); *Evans v. State*, 606 S.W.2d 880 (Tex.Crim.App. 1980), *overruled by Woods v. State*, 653 S.W.2d 1 (Tex.Crim.App.1982). *Lewis* and

*Evans* both held the failure to set out all of the elements of the offense in the application paragraph constituted fundamental error entitling the appellant to a new trial. These cases, like all of the cases cited by appellant in support of these points of error, pre-date the case establishing the appropriate standard of review for error of the type complained of under these points of error—*Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1985)(opinion on rehearing). If no proper objection to the charge error was made at trial, on appeal the accused must claim fundamental error, and reversal results only if the error is so egregious and created such harm that the accused has not had a fair and impartial trial. *Id.* at 171. The actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Id.*

This case is similar to *Dinkins v. State*, in which an element omitted from the application paragraph (the mental state for the second murder in a double-homicide capital prosecution) was supplied elsewhere in the charge. *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995). The Court of Criminal Appeals found no error. *Id.* at 340. The application paragraph in a felony murder case, *Holley v. State*, omitted the facts distinguishing between misdemeanor and felony injury to a child, but the Court of Criminal Appeals found no error because the definitional portion of the charge defined felony injury to a child. *Holley v. State*, 766 S.W.2d 254 (Tex. Crim.App.1989).

The first paragraph of the charge stated: "The defendant, Malcolm C. Moffett together with nineteen other individuals, stand charged by indictment with the offense of Murder, alleged to have been committed in Polk County, Texas, on or about the 5th day of August, 1994." The county and offense date were also identified in the paragraphs on the lesser included offenses. The evidence adduced at trial established Moffett

assaulted Randy Payne on August 5, 1994, at the Terrell prison unit in Polk County, Texas. Although the date and county should have been included in the application paragraph of the charge to the jury, Moffett did not object to the omissions, the omitted matters appear elsewhere in the charge, and they were proven at trial without contradiction. Assuming the charge was erroneous, appellant has not identified how he was harmed and we do not perceive any manner in which he might have been deprived of a fair and impartial trial. Points of error one and two are overruled.

Moffett also combines his next two points of error:

### Point of Error Three

The admissible evidence adduced at the trial of the case was legally insufficient to support appellant's conviction for the offense of murder, in that the evidence adduced at trial failed to prove, beyond a reasonable doubt, that appellant intentionally or knowingly committed the felony offense of engaging in organized criminal activity, to-wit: participated in a combination, and acting in combination, did commit aggravated assault upon Randy Payne.

### Point of Error Four

The admissible evidence adduced at the trial of the case was legally insufficient to support appellant's conviction for the offense of murder, in that the evidence adduced at trial failed to prove, beyond a reasonable doubt, that appellant intentionally or knowingly committed the felony offense of engaging in organized criminal activity, to-wit: participated in a combination, and acting in combination, did commit aggravated assault upon Randy Payne.

■ Moffett was charged under the felony murder provision of the Penal Code. Act of June 14, 1973, 63rd Leg., R.S., Ch. 426, § 1, sec. 19.02(a)(3), 1973 Tex. Gen. Laws 1123 (amended 1993)(current version at TEX. PEN. CODE ANN. § 19.02(b)(3) (Vernon 1994)).[1] He challenges the legal and factual sufficiency of the proof of the underlying felony, engaging in organized criminal activity. Act of June 18, 1993, 73rd Leg., R.S., ch. 761, § 3, sec. 71.02(a)(1), 1993 Tex. Gen. Laws 2967 (amended 1994)(current version at TEX. PEN. CODE § 71.02(a)(1) (Vernon 1994)).

A "combination" means three or more persons who collaborate in carrying on criminal activities, although they may not know each other's identity, and membership in the combination may change from time to time. Act of June 16, 1991, 72nd Leg., R.S., ch. 555, § 1, sec. 71.01(a), 1991 Tex. Gen. Laws 1968 (amended 1994)(current version at TEX. PEN. CODE § 71.01(a) (Vernon 1994)). Appellant argues there is no physical evidence demonstrating the nature of the combination and no evidence of any agreement that appellant participate in a combination including at least two other persons. We disagree with appellant's assessment of the testimony of his fellow inmates.

Randy Payne, the victim and one of the few white inmates in closed custody[2] at the Terrell Unit, arrived at the prison in August 1994. Inmate Lonnie Carney testified he asked Payne if he was going to fight or ride.[3] Payne indicated his intention to fight. Another inmate, Angelo Nesbitt, approached and told Carney to stay out of his business, a message that Nesbitt was going to whore-check[4] Payne. It was obvious to everyone that Payne was going to have to fight that day in order to avoid paying for protection.

Inmate Demond Stewart testified that in the Texas prison system in general, and the Terrell Unit in particular, a newly arrived inmate is called out[5] by inmates. Everyone either had to stay down[6] or get hogged.[7]

---

1. The offense was committed before the effective date of the amendment.

2. That part of the institution composed of inmates who have been removed from the general prison population for committing infractions or for other disciplinary reasons.

3. Exchange sex or commissary privileges for protection from other inmates.

4. Fight to determine if the inmate will ride.

5. Physically confronted.

6. Be strong enough to fight.

Usually an inmate needed to fight two or three times before being accepted as a regular.[8] Stewart noticed a commotion involving several blacks and SA's,[9] saw Moffett sitting on the stairs with a cut over his eye, and went upstairs to the showers, where he encountered a badly bleeding Randy Payne. He and another inmate assessed the gravity of the situation: "this dude is fixing to die...." Payne stumbled down the stairs, where he was cliqued[10] by some Hispanic prisoners who kicked Payne 15 to 20 times in the face with steel-toed boots.

Inmate Bradley Layne Phillips testified Payne told him there were people trying to make him ride. Later that day another inmate told him "It's going down" and he saw Moffett, Nesbitt and two other black inmates fighting Payne. They knocked Payne to the ground and kicked him while Payne was curled up helpless on the ground. The black inmates walked off. Later, Phillips saw Payne and some black inmates walk into a cell, where other testimony established another beating took place, then saw three or four Hispanic inmates assault Payne again.

According to Matthew Eugene Ewers, before the attack the black inmates had been discussing the new white boy on the block. The first fight took place when appellant assaulted Payne in the shower on the first level. Nesbitt, Marvin Richardson, and one other inmate were also involved in this attack. The next fight occurred when these same individuals attacked Payne in the third level shower. The third and fourth fights involved the group of Hispanic inmates who attacked Payne on the third level and in the stairwell. Then Moffett, Nesbitt and Richardson kicked and hit Payne once again on the first level. When asked if this attack occurred "[i]n front of God and everybody," Ewers replied, "Well, if God was present, you know, yes." At this point the officers arrived and racked up[11] the inmates.

Keith Block testified Moffett and Angelo Nesbitt were talking after chow[12] about making Payne ride. Moffett and Nesbitt decided "they was going to be the two inmates that would start the whore checking." Moffett told Payne to get a cup of water out of the shower, then followed Payne into the shower and struck him on the head. Payne started to get the better of Moffett, so Moffett called in Nesbitt, who took over the attack. Then they called in Marvin Richardson. Payne was already on the ground, badly beaten. Payne's mouth was torn up and his nose was bleeding. Then Richardson and another inmate assaulted Payne in a cell. An Hispanic inmate declared "We are going to show you black dudes how this here goes" and, along with others, assaulted Payne on the stairs. When Payne made his way back to the first level, Moffett and the Hispanic inmates were talking. The Hispanic inmate ran over and kicked Payne in the face three or four times, hitting his head against the wall each time. Then appellant and an Hispanic inmate ran over to Payne and started beating him, saying, "Man, you are going to ride. You are going to ride. You are going to ride with both of us. You are going to ride with the blacks, and you are going to ride with the Mexicans."

Robert Green also testified he saw appellant and other black inmates beating Payne in the head and jumping up and down on him.

We find the State established the existence of the organized criminal activity without the benefit of the testimony of any of the conspirators. The agreement may be inferred from the conversations between the inmates about whore checking, and from their actions in acting in concert in the series of attacks. Appellant implies there is insufficient evidence of a combination of persons because groups associated only with members of their own race. Most of the inmate witnesses

---

7. To have your possessions taken from you in your presence.

8. A person who does not have to fight in order to avoid being assaulted or hogged.

9. "Ese," meaning "you" or "that," a reference to an Hispanic person.

10. Attacked by a group.

11. Returned to the prison cells.

12. Mealtime.

expressed deeply rooted racism, but it is clear from their testimony that the white prisoners were fair game for all the other prisoners. There is also specific testimony that Moffett and an Hispanic inmate attacked Payne with the expressly stated intention of forcing Payne to pay protection to both the Hispanics and the blacks. The jury could have found, beyond a reasonable doubt, that appellant acted in combination with at least two other black inmates (Nesbitt and Richardson) and also with the Hispanic inmates. The record reflects the inmates took turns assaulting Payne until they killed him. It is clear they formed a combination to further the purpose of assaulting Payne, because he was stronger than they had anticipated, because they all had a strong desire to subjugate him because of his race, and because they were engaged in a rivalry over who could break Payne and extort protection from him.

We hold a rational trier of fact could have found all of the elements of the offense to have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). Point of error three is overruled.

Although appellant discusses the standard of review for factual sufficiency, he makes no attempt to illustrate for this Court how the evidence adduced at trial so overwhelmingly preponderates in appellant's favor as to make a finding of guilt so against the great weight and preponderance of the evidence as to shock the conscience. Some of the inmate witnesses were shown through cross-examination to have not actually seen all of the attacks, but they understood what was occurring and who the actors were. Some inmates were shown to be on medication for psychological disorders. All were convicted felons whose credibility was suspect. The record reflects only minor inconsistencies between the testimony of the different inmates. Considering all of the evidence equally, we do not find the jury's finding of guilt to be so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

*Clewis v. State*, 922 S.W.2d 126 (Tex.Crim. App.1996). Point of error four is overruled.

Point of error five urges:

The jury was not authorized to convict appellant of the offense of murder, in that the trial court's charge did not contain an application paragraph authorizing the jury to convict appellant of the offense of murder.

Moffett argues the application paragraph in question describes the offense of engaging in organized criminal activity, not murder. We disagree. Moffett refers us to the first two means of committing murder, intentionally or knowingly causing the death of an individual, and intending to cause serious bodily injury and committing an act clearly dangerous to human life, but ignores the means of commission which appears in the indictment and in the jury charge. Appellant was convicted under the "felony murder" provisions of the Penal Code, at the time of the offense located at Penal Code Section 19.02(a)(3), which authorizes a conviction for murder if the defendant commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual. The underlying felony described in both the indictment and the jury charge is engaging in organized criminal activity, a felony under Penal Code Section 71.02(a)(1). The jury could convict Moffett of murder under these circumstances.[13] Point of error five is overruled.

Moffett groups his remaining points of error in a single argument:

### Point of Error Six

The trial court erred, in that the trial court, over appellant's objection, clearly abused its discretion by improperly excusing a juror *sua sponte*, after the jury had been selected, sworn and impaneled, and after the indictment was read to the jury in open court, and after appellant entered his plea of not guilty, but prior to any

---

13. Had the offense been committed 27 days later, appellant might have faced a capital murder indictment. Tex. Pen.Code Ann. § 19.03(a)(5)(B) (Vernon 1994).

evidence being heard, in violation of TEX. CODE CRIM. PROC. ANN. art. 36.29(a) (Vernon Supp.1994) and TEX. CONST. Art. V, sec. [sic] 13.

### Point of Error Seven

The trial court reversibly erred, in that after the trial court, over appellant's objection, improperly excused a juror *sua sponte*, the trial court ordered, over appellant's objection, and without appellant's written waiver of his right to a trial by jury, that trial on the merits continue with eleven (11) jurors, thereby violating appellant's right to trial by jury, pursuant to TEX.CODE CRIM. PROC. ANN. art. 33.01 (Vernon 1989), to-wit: the jury shall consist of twelve (12) qualified jurors.

■ One of the jurors advised the trial court she had been up all night long, she and her husband had a lot of personal family problems, and said, "I feel like that I can't be what I should be sitting in there." She stated the stress might be so severe that her mental capacity to participate in the trial would be diminished, and she would possibly be physically sick. She stated she could not concentrate on the trial in order to render a fair and impartial verdict. She was taking Librax. The trial court noted on the record that the juror was "obviously very upset." There was no evidence to the contrary, although the juror admitted she was neither mentally ill nor mentally retarded, nor was she a completely physically disabled person. Moffett relies upon *Marquez v. State*, a case where the trial court declared a witness to be disabled when the juror only stated someone had talked to him in the hall about a burglary and that he thought it would "in a way" affect how he listened to the testimony. *Marquez v. State*, 620 S.W.2d 131, 132 (Tex. Crim.App.1981). In contrast to the situation present in *Marquez*, in our case the juror told the court in no uncertain terms that she was so emotionally upset by her personal problems she could not perform her service as a juror.

One Court of Appeals case held a written jury waiver was required where a disabled juror was excused. *Hanley v. State*, 909 S.W.2d 117 (Tex.App.—Houston [14th Dist.]

1995, no pet.). *Hanley* is inapposite because it involved a misdemeanor prosecution. In felony prosecutions such as this, the Code of Criminal Procedure permits a trial to continue with eleven jurors if a juror becomes disabled. Act of June 12, 1991, 67th Leg., R.S., ch. 545, § 1, art. 35.26, 1981 Tex. Gen. Laws 2264 (amended 1991)(current version at TEX.CODE CRIM. PROC. ANN. art. 36.29 (Vernon 1981 & Supp.1997)). We find no abuse of discretion in excusing the juror. There being no error in excusing the juror, there was no error in continuing the trial as permitted by article 36.29. Points of error six and seven are overruled. We affirm the judgment and sentence of the trial court.

AFFIRMED.