**Affirmed and Opinion filed January 24, 2013.**



In the

# Fourteenth Court of Appeals

### NO. 14-11-00927-CR
### NO. 14-11-00928-CR

## JESUS CORRDERO ROMERO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

### On Appeal from the 262nd District Court
### Harris County, Texas
### Trial Court Cause No. 1281646 & 1313451

## O P I N I O N

Appellant Jesus Corrdero Romero was convicted of the felony offenses of indecency with a child and aggravated sexual assault of a child. Appellant seeks reversal of his convictions, complaining in four related issues that the trial court abused its discretion by removing a juror as disabled, thereby depriving appellant of his constitutional right to a unanimous jury verdict, and further abused its

discretion by refusing to grant a mistrial; and in two related issues that, by refusing to unseal personal juror information, the trial court violated article 35.29 of the Texas Code of Criminal Procedure and appellant's right to due process. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged with the felony offenses of aggravated sexual assault of a child and indecency with a child, alleged to have been committed on or about June 9, 2006, and June 1, 2007, respectively.

At trial, the complainant D.L. testified that appellant is her stepfather, who married her mother when D.L. was very young. D.L. testified that she has an older sister, a younger sister, and one younger brother, and they all lived together growing up.

According to D.L., the first instance of abuse occurred one weekend in 2006, when she was in the sixth grade. D.L., her mother, and her siblings were living at a house on Beaver Bend Road. Her mother and appellant were separated at the time, but on weekends appellant would watch the children at the house. Appellant entered D.L.'s bedroom and asked her what she was watching on TV. As appellant was talking to D.L., he put his hand under the blanket she had over her legs, inside her pants, and into her underwear. Appellant then started touching D.L. on her vaginal lips and directed his fingers inward. D.L. tried squeezing her legs together, but appellant managed to stick his fingers partway inside of her vaginal lips.

D.L. testified that another incident occurred at the house on Beaver Bend. Appellant was sitting on the family nanny's bed when D.L. came in to ask for his help in fixing her desk. According to D.L., appellant then sat on top of her and caressed her breast. He then touched her vagina over her clothes. D.L. managed to

push herself away from appellant.

The final incident occurred the next summer when the family lived at a house on Marlene Street. D.L. was watching TV, when around noon appellant walked into her room and locked the door. He told her she looked tired and needed a massage. D.L. testified that appellant started massaging her shoulders and then moved downwards. He placed his hands on her buttocks beneath her underwear and then attempted to insert his finger into her vagina from the back. After the touching went on for five to ten minutes, appellant ejaculated on D.L.'s back.

In 2010, when D.L. was a junior in high school, her mother and two aunts confronted her about missing school, and she eventually told them about the abuse. D.L. and one of her aunts then reported the abuse to police.

At trial, appellant denied all the allegations against him. He acknowledged that when his mother and D.L's mother confronted him about whether he had ever abused D.L., he stated that if he was going to abuse anyone he would have abused D.L.'s older sister[1] instead. This confrontation took place after D.L. told appellant's sister that D.L. caught appellant watching her while she was changing clothes for school one morning during her freshman year, and appellant's sister told her mother and D.L.'s mother.

On the first afternoon of deliberations, the jury sent out two notes; one requesting trial exhibits and another requesting a portion of D.L.'s testimony. On the second day, the jury sent out additional notes: the first requesting a copy of D.L.'s forensic interview; the second indicating they were at a point suggesting they would be unable to reach a verdict, to which the court responded that they continue deliberations; and then two more notes requesting portions of testimony.

---

[1] D.L.'s older sister was twenty years old at the time.

The jury foreman then sent out a note indicating that "juror 31" had become ill, was throwing up due to stress, and did not feel that she could render a clear decision. The jury requested they be allowed to end deliberations early and resume the next day. The trial court recessed for the day.

The next morning, the bailiff, Deputy Kaminski, received a phone call from juror 31, who stated that she was still sick and did not think she could make it in to court. Kaminski told juror 31 that if she could not appear, she needed a doctor's note. Juror 31 appeared in court at 9:15 a.m., and the jury continued deliberations. About an hour later, the jury sent out a note indicating that juror 31 wanted to be released because she did not feel she could make a decision based on the evidence presented.

The trial court questioned Kaminski. According to Kaminski, the previous afternoon, he had seen juror 31 leaving the bathroom covering her mouth and holding her stomach. Then after the jury was released early, juror 31 returned to the bathroom and threw up. That morning, when Kaminski asked juror 31 how she was doing, she initially stated that she was doing okay. Later, when the jury foreman and juror 31 stepped out to hand Kaminski the latest note, juror 31 informed him that she had not slept well, she was "so stressed" and "just could not handle it," and she was not feeling well.

Based on Kaminski's testimony, the prosecutor requested that the trial court exercise its discretion to add more to the record regarding juror 31's disability and that the court then find juror 31 disabled and replace her with the alternate juror. Appellant moved for mistrial, arguing that juror 31 was not disabled but had stated she could not make a decision based on the evidence presented, which indicated the jury was hung. After the court denied appellant's motion for mistrial, the prosecutor requested that juror 31 be questioned about physical illness. Appellant

4

objected, but the trial court proceeded to question juror 31 in chambers.

The trial court asked juror 31 how she was feeling and if she believed that she could continue deliberating. She responded, "I don't believe I am able to go on. I feel sick to my stomach, headaches, haven't been able to sleep the past couple of days. I feel stressed out. This is affecting me physically now." She also indicated that she was having "physical nausea" and had a headache. When defense counsel asked juror 31 whether she was feeling sick "because of pressure in the back," meaning deliberations in the jury room, she responded, "Definitely pressure but I just feel really sick. I'm stressed out." Juror 31 indicated that she just felt "overstressed out" because "just being back there deliberating is stressing." She stated that deliberations have stressed her "up to the point that it's becoming physically affected [sic] to my own well-being." She agreed that she "cannot make a decision based on deliberations." She indicated that she had vomited the day before during deliberations and stated, "I feel emotionally sick, and that is carrying over to physical sickness." Although juror 31 stated that she was "not disabled," when asked by the court—"Just so we're clear, by the term 'disabled,' do you feel like you can continue?"—she answered, "I don't think that I can physically continue. It's not letting me sleep. It's not letting me live a normal life. It's affecting my family. It's affecting my daughter. It's affecting me physically now, I can't." She continued, "Well, I am feeling too much pressure back there to doing [sic] something that I'm not willing to do. And I can't sleep at night just thinking here—I am sick. I mean, I am physically sick at this point." Juror 31 indicated that she became physically ill the day before, was physically sick the previous afternoon "[a]nd today," and had called in physically ill that morning. When the court asked her whether she physically was able to listen and render a decision, juror 31 responded: "I think given that I am physically feeling

5

stuff right now, I don't think that I am able to make a decision at all even after deliberations. I just—no."

After juror 31 exited chambers, the trial court noted for the record that juror 31 "appeared to be nauseous as she was sitting here in the chair. We did have, I think, a trash can in front of her; but she was heaving several times. She was tearful and appears to be— . . . [p]hysically distressed and also grabbed her head and said that her head was hurting." The court then decided to release juror 31 and replace her with alternate juror 39. Appellant resubmitted his motion for mistrial. The court met with juror 39—who had been told to remain available and had returned to court that morning—and confirmed she had been given instructions the previous day that she was still a juror and had continued to follow the admonitions not to conduct any research about or discuss the case. The court ordered the jury to restart deliberations with replacement juror 39. After the jury retired, the court denied appellant's motion for mistrial.

The jury found appellant guilty of both offenses. The jury sentenced him to ten years' confinement for the offense of indecency with a child and to twenty years' confinement for the offense of aggravated sexual assault of a child, the sentences to run concurrently.

Appellant then filed a motion for new trial as well as three motions to unseal the information sheets on the jurors who deliberated during the guilt-innocence phase. The third motion to unseal included: (1) an affidavit from attorney Michael McLane, who averred that a juror in appellant's case told him that she was released from jury service because she became physically ill due to intimidation by the other jurors about her "not guilty" vote, and (2) an affidavit from a private investigator, who stated that he could not locate the jurors based on their names without additional personal information. The trial court denied all of appellant's

6

motions.

On appeal of both his convictions, appellant raises six issues. First, appellant argues that the trial court's removal of juror 31 was a structural error that deprived him of his constitutional right to a unanimous jury verdict under the Sixth and Fourteenth Amendments. Second, he argues the court's removal of juror 31 was a structural error that violated his right to a unanimous jury verdict under article V, section 13, of the Texas Constitution. Third, appellant contends that the trial court abused its discretion in finding juror 31 disabled under article 36.29(a) of the Texas Code of Criminal Procedure.[2] Fourth, he argues that the court violated section 35.29 of the Code of Criminal Procedure by refusing to unseal juror information sheets upon a showing of good cause. Fifth, he contends that the court's refusal to unseal the jurors' personal information violated his due process rights under the Fifth and Fourteenth Amendments. Finally, appellant asserts that the court abused its discretion by refusing to grant a mistrial.

## II.    STANDARD OF REVIEW

The trial court has discretion to determine whether a juror has become

---

[2] Article 36.29(a) applies in cases where a juror "as determined by the judge, becomes disabled from sitting at any time before the charge of the court is read to the jury." TEX. CODE CRIM. PROC. ANN. art. 36.29(a) (West 2012). In this case, subsection (c) applies:

> After the charge of the court is read to the jury, if a juror becomes so sick as to prevent the continuance of the juror's duty and an alternate juror is not available, or in any accident of circumstance occurs to prevent the jury from being kept together under circumstances under which the law or the instructions of the court requires that the jury be kept together, the jury shall be discharged, except that on agreement on the record by the defendant, the defendant's counsel, and the attorney representing the state 11 members of a jury may render a verdict and, if punishment is to be assessed by the jury, assess punishment. If a verdict is rendered by less than the whole number of the jury, each member of the jury shall sign the verdict.

*Id.* art. 36.29(c).

7

disabled under article 36.29 of the Code of Criminal Procedure and to seat an alternate juror under article 33.011 of the Code of Criminal Procedure.[3] *Scales v. State*, 380 S.W.3d 780, 783 (Tex. Crim. App. 2012). "[T]he trial court is the sole fact-finder and judge of the credibility of the testifying jurors," and we review its decision for an abuse of discretion. *Id.* at 784. Absent such an abuse of discretion, we will not find reversible error. *Id.* (citing *Brooks v. State*, 990 S.W.2d 278, 286 (Tex. Crim. App. 1999)); *Ponce v. State*, 68 S.W.3d 718, 721 (Tex. App.— Houston [14th Dist.] 2001, pet. ref'd) (same). Thus, the trial court must make a sufficiently supported finding that the juror was disqualified or unable to perform the duties of a juror. *Scales*, 380 S.W.3d at 784. It is not our role to substitute our own judgment for that of the trial court, but rather to assess whether, after viewing the evidence in the light most favorable to the trial court's ruling, the ruling was arbitrary or unreasonable. *Id.* (citing *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995)). We must uphold the trial court's ruling if it falls within the zone of reasonable disagreement. *Id.* (citing *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009)).

Similarly, we review a trial court's denial of a mistrial for an abuse of

---

[3] Article 33.011 provides:

> Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury renders a verdict on the guilt or innocence of the defendant and, if applicable, the amount of punishment, become or are found to be unable or disqualified to perform their duties or are found by the court on agreement of the parties to have good cause for not performing their duties. Alternate jurors shall be drawn and selected in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath, and shall have the same functions, powers, facilities, security, and privileges as regular jurors. An alternate juror who does not replace a regular juror shall be discharged after the jury has rendered a verdict on the guilt or innocence of the defendant and, if applicable, the amount of punishment.

TEX. CODE CRIM. PROC. ANN. art. 33.011(b) (West 2012).

discretion, viewing the evidence in the light most favorable to the ruling, and deferring to the court's resolution of historical facts and its determinations concerning credibility and demeanor. *Benefield v. State*, —S.W.3d—, No. 14-11-00452-CR, 2012 WL 5450717, at \*3 (Tex. App.—Houston [14th Dist.] Nov. 8, 2012, no. pet. h.) (citing *Ocon* 284 S.W.3d at 884–85). We must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.*

### III.   ANALYSIS

### A. Removal of juror 31 as disabled

#### 1. Appellant's third issue

We initially address appellant's third issue since issues one, two, and six also rest upon his premise that juror 31 was not disabled and instead was able to render a decision in the case. Appellant argues that there was insufficient evidence for the trial court to conclude that juror 31 suffered from a disability pursuant to article 36.29, and thus the trial court abused its discretion in removing her. We disagree.

##### a. Applicable law

Article 36.29 requires that a disabled juror suffer from a "physical illness, mental condition, or emotional state that would hinder or inhibit the juror from performing his or her duties as a juror, or that the juror was suffering from a condition that inhibited him from fully and fairly performing the functions of a juror." *Scales*, 380 S.W.3d at 783 (internal quotation marks omitted and citing *Valdez v. State*, 952 S.W.2d 622, 624 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd).

However, the trial court must not dismiss a juror for reasons related to that juror's evaluation of the sufficiency of the evidence. *Id.* (citing *United States v.*

9

*Edwards*, 303 F.3d 606, 633 (5th Cir. 2002)).

### *i. Nature of the disability*

The trial court does not abuse its discretion in discharging a juror as disabled per article 36.29 where there is sufficient evidence of physical illness. *See Routier v. State*, 112 S.W.3d 554, 588 (Tex. Crim. App. 2003) (trial court received information that juror was bedridden with influenza and later admitted doctor's note); *Allen v. State*, 536 S.W.2d 364, 366–67 (Tex. Crim. App. 1976) (juror testified he had symptoms of influenza such as tightness in chest, fever, and trouble sleeping); *Maciel v. State*, 517 S.W.2d 789, 790 (Tex. Crim. App. 1975) (trial court received information that juror had been admitted to hospital with high blood pressure); *Lopez v. State*, 316 S.W.3d 669, 679 (Tex. App.—Eastland 2010, no pet.) (trial court received information that juror had stomach ailment rendering her unable to come to court); *Moore v. State*, 82 S.W.3d 399, 406–07 (Tex. App.— Austin 2002, pet. ref'd) (same), *overruled on other grounds by Taylor v. State*, 268 S.W.3d 571 (Tex. Crim. App. 2008); *Hughes v. State*, 787 S.W.2d 193, 195 (Tex. App.—Corpus Christi 1990, pet. ref'd) (juror testified she felt queasy, had headaches, and had vomited earlier, and trial court expressly stated for the record that juror was exhibiting signs of physical illness).

The trial court also does not abuse its discretion in discharging a juror as disabled in situations where emotional stress resulted or could result in physical illness. *Castro v. State*, 233 S.W.3d 46, 48–49 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (trial court discharged Jehovah's Witness juror as disabled where stress from thought of passing judgment on another person resulted in physical illness, including repeated vomiting); *Moffett v. State*, 949 S.W.2d 778, 783 (Tex. App.—Beaumont 1997, pet. ref'd) (trial court discharged juror as disabled where stress from family problems was affecting her mental capacity and could result in

physical illness); *see also Hill v. State*, 90 S.W.3d 308, 310, 315 (Tex. Crim. App. 2002) (finding juror with generalized anxiety disorder who was suffering panic attacks disabled per article 36.29).

### *ii. Duration of the disability*

The trial court also does not abuse its discretion in discharging a juror as disabled notwithstanding the temporary nature of the physical illness. *Lopez*, 316 S.W.3d at 679 (noting "courts have found that jurors who complained of other temporary illnesses that impaired their ability to perform the functions of a juror were properly determined by the trial court to be disabled" and citing *Allen*, 536 S.W.2d at 366–67, and *Hughes*, 787 S.W.2d at 195); *Moore*, 82 S.W.3d at 406–07 (same).

### *b. No abuse of discretion*

We conclude that the trial court did not abuse its discretion in concluding that juror 31 was disabled. Juror 31 suffered from a physical illness that prevented her from continuing to perform her duties, and there is no indication that the trial court removed the juror for her evaluation of the evidence.

### *i. Nature of the disability*

Appellant first argues that the trial court's decision was based on insufficient evidence of disability.

Here, after conducting a hearing, the trial court determined that juror 31 was disabled due to physical illness, including nausea, vomiting, and headache, which prevented her from continuing to perform her duties as a juror. *See* TEX. CODE CRIM. PROC. ANN. art. 36.29(c) (West 2012). The record contains sufficient evidence to support that conclusion. On the afternoon before the trial court released juror 31, the jury sent out a note requesting that the court end deliberations

11

early because: "We currently have a juror 31 who has become ill and doesn't feel like she can continue today and render a clear decision. She is currently throwing up due to the stress." Kaminski testified that juror 31 called in "still sick" the morning of the day she was released, and that the previous afternoon he had observed juror 31 covering her mouth, holding her stomach in pain, and vomiting. While after arriving at court juror 31 initially told Kaminski she was "doing okay," Kaminski testified that later when juror 31 and the foreman stepped out to give him the jury's note, she indicated that she had not slept and was not feeling well. Juror 31 expressly told the court herself that she felt nauseated and sick to her stomach, had a headache, had not been sleeping, and felt "overstressed out" by deliberations. She indicated that she felt "emotionally sick, and that is carrying over to physical sickness." With regard to her ability to continue performing the functions of a juror, juror 31 informed the trial court: "I don't believe I am able to go on. I feel sick to my stomach, headaches, haven't been able to sleep the past couple of days. I feel stressed out. This is affecting me physically now." She further indicated: "I don't think that I can physically continue." In response to the court's question as to "whether or not physically [she was] able to listen or render a decision? If [she was] physically disabled—" juror 31 answered, "I think given that I am physically feeling stuff now, I don't think I am able to make a decision at all even after deliberations. I just—no." Aside from the symptoms she verbally described, the trial court noted for the record that juror 31 grabbed her head in pain and dry-heaved several times while the court and the parties were questioning her about whether she was physically ill.

Although appellant asserts that juror 31 admitted she was not "disabled," upon clarification by the trial court—"by the term 'disabled,' do you feel like you can continue?"—she then informed the court she could not "physically continue"

12

to serve as a juror. *See Allen*, 536 S.W.2d at 366 (juror "would not say he was disabled" but "acknowledged, however, that serving would involve hard-ship and be detrimental to his physical well-being"); *Moffett*, 949 S.W.2d at 783 (juror admitted she was not a physically disabled person but "told the court in no uncertain terms that she was so emotionally upset by her personal problems she could not perform her service as a juror").

The Texas Court of Criminal Appeals has emphasized the importance of the trial court's hearing from the juror *herself* to ensure that the court has sufficient information from which to determine that the juror is unable to perform her duties. *Scales*, 380 S.W.3d at 784 n.18, 786 (affirming reversal of trial court's decision to discharge juror where only evidence as to juror's alleged refusal to deliberate came from jury foreman); *cf. Bass v. State*, 622 S.W.2d 101, 107 (Tex. Crim. App. 1981) (no abuse of discretion in not discharging juror as disabled where trial court at time of hearing "had the opportunity to observe [juror's] demeanor and listen to the tone of her voice" instead of being provided with "nothing more than a cold record").[4] Here, the trial court not only observed juror 31's tone and demeanor as she testified, but also witnessed her physical symptoms and noted them for the record.

### ii. Duration of the disability

Although appellant complains that the trial court should have considered the likely duration of juror 31's illness or allowed her to seek medical care and then report back, courts do not abuse their discretion by discharging the juror without doing so, nor did appellant request postponement. *See Lopez*, 316 S.W.3d at 679–80 (no abuse of discretion in overruling request to postpone trial and removing juror with stomach ailment, noting "[a]rticle 36.29 does not require the trial court

---

[4] *See also Valdez*, 952 S.W.2d at 624 ("Had the trial court questioned the juror on the record, we might have been able to make a proper determination.").

to consider postponing the trial . . . in the event of a juror's disability"); *Moore*, 82 S.W.3d at 406–07 (no abuse of discretion in overruling request to postpone trial and removing juror with stomach ailment under article 36.29).

### *iii. No removal based on the juror's evaluation of the evidence*

We also consider the effect of the Court of Criminal Appeals' recent decision in *Scales v. State* on this case. The *Scales* court considered whether the trial court abused its discretion in removing and replacing a juror based on her refusal to deliberate. 380 S.W.3d at 781–82.

The error in *Scales* stemmed from the trial court's removal and replacement of the juror at issue without developing sufficient information to determine whether the juror actually was "unable or disqualified to perform [her] duties" under article 33.011(b)—or whether her refusal to deliberate was based on her evaluation of the sufficiency of the evidence. When it decided to remove the juror at issue, the trial court relied merely on the testimony of the jury foreman who requested that the juror at issue be removed. *Id.* at 785–86. Further, the foreman's testimony tended to show that instead of the juror at issue being unable to continue to serve due to her alleged complete refusal to deliberate, there was a possibility that the reason the juror refused to continue to deliberate—and why the foreman wanted her removed—was because she already had made up her mind about the merits of the case. *Id.*

In contrast, here the trial court decided to remove juror 31 due to her physical inability to continue deliberating after the trial court heard juror 31's own testimony and observed her tone and demeanor. *See id.* at 784 n.18 (noting best practices indicate that trial judge speak with juror before determining she is disabled). Juror 31 expressly told the trial court that she had been and currently was physically sick, and that she could not physically continue. In addition, the

14

court heard from the bailiff about juror 31's physical illness. Moreover, although juror 31 stated that "[i]t is extremely hard for me to make a decision in this case" and that she believed this difficulty was "based on the evidence provided," she also indicated that she felt emotionally distraught and physically ill "[n]ot as much about the evidence . . . just being back there deliberating is stressing." Ultimately, she did not think she was "able to make a decision at all even after deliberations," given she was "physically feeling stuff now." The record thus reflects that the trial court conducted an investigation on the record into "whether or not Juror No. 31 [was] still ill and facing undue stress," then discharged juror 31 based on her physical illness, which rendered her physically unable to continue as a juror.

While juror 31 did state she was "feeling too much pressure back there to doing [sic] something that [she was] not willing to do," she did not indicate that the "something" she was not willing to do was vote against her assessment of the merits of the case. Instead, juror 31 indicated that *physically* she could not even make a decision.

Even assuming that the hearing evidence tended to show that juror 31 had become physically ill because she was feeling stress from being a holdout juror, as opposed to feeling stress from the deliberations process itself, "hold-out jurors are not immune from dismissal based upon just cause." *United States v. Edwards*, 303 F.3d 606, 633–34 (5th Cir. 2002) (affirming district court's dismissal of juror under rule 23(b)[5] based on his inability to follow court's instructions and lack of candor in dealing with the court), *cited in Scales*, 380 S.W.3d at 783 n.10. In *Edwards*, the Fifth Circuit noted that the "great deal of discussion . . . about

---

[5] Federal Rule of Criminal Procedure 23(b) governs juror removal during deliberations in federal district court: "After the jury has retired to deliberate, the court may permit a jury of 11 persons to return a verdict, even without a stipulation by the parties, if the court finds good cause to excuse a juror." FED. R. CRIM. P. 23(b)(3).

15

whether Juror 68 was or was not a 'hold-out' juror" was inapposite; but even assuming he was a holdout, the record did not indicate that the district court dismissed the juror because of his view of the evidence. 303 F.3d at 634 (citing *U.S. v. Huntress*, 956 F.2d 1309, 1312–13 (5th Cir. 1992) (affirming district court's removal of alleged holdout juror due to mental health disability)); *see also U.S. v. Leahy*, 82 F.3d 624, 629 n.4 (5th Cir. 1996) ("Evidence that a juror was holding out, however, does not alter the trial court's discretion in removing the juror.").[6]

Likewise, there is no evidence here that the trial court was motivated to dismiss juror 31 based on the juror's evaluation of the sufficiency of the evidence. Rather, the focus of the court's inquiry was whether juror 31 was "physically able to listen or render a decision," and she indicated that she physically could not continue. Moreover, as in *Edwards*, the trial court expressly disavowed that its dismissal of juror 31 had anything to do with whether she could be a holdout. *See* 303 F.3d at 634. When defense counsel suggested that juror 31's physical illness was brought on by the emotional stress of holding out,[7] the trial court indicated that it had "given the juror an opportunity to place on the record how she's feeling in her own words" and that "[defense counsel's] interpretation of what's going on in the jury room, not being a party to what's going on in the jury room, really is outside our purpose in being back here at this time." Thus, the trial court here did not dismiss juror 31 based on her evaluation of the sufficiency of the evidence.

---

[6] *See also Perez v. Marshall*, 119 F.3d 1422, 1427–28 (9th Cir. 1997) (dismissal permissible under California juror substitution procedure where trial court knew that juror at issue was sole holdout for acquittal because juror's emotional instability that made her unable to continue deliberating provided good cause for her dismissal, and no evidence suggested court's decision was motivated by juror's views on merits of case).

[7] Specifically, defense counsel indicated that juror 31 did not "feel like going the direction that the other jurors wanted to go."

*See Scales*, 380 S.W.3d at 783.

Reviewing the evidence in the light most favorable to the trial court's ruling, and considering that the trial court is the sole fact-finder and judge of credibility, and had the opportunity to observe juror 31's demeanor and tone as she testified, we cannot say that the court's ruling was arbitrary or unreasonable, or outside the zone of reasonable disagreement. Therefore, the trial court did not abuse its discretion in removing juror 31, and we overrule appellant's third issue.

## 2. Appellant's first and second issues

Appellant also contends that juror 31's removal and replacement violated appellant's right to a unanimous jury verdict under the Sixth and Fourteenth Amendments and under article V, section 13, of the Texas Constitution.

### a. Sixth and Fourteenth Amendments

Although we recognize that the Sixth Amendment is applicable to the states by virtue of the Fourteenth Amendment,[8] "[t]he United States Constitution clearly does not grant a right to a unanimous verdict." *Phillips v. State*, 130 S.W.3d 343, 351 n.6 (Tex. App.—Houston [14th Dist.] 2004) (citing *Apodaca v. Oregon*, 406 U.S. 404, 410–12 (1972)), *aff'd*, 193 S.W.3d 904 (Tex. Crim. App. 2006); *see also McDonald v. City of Chicago, Ill.*, —U.S.—, 130 S. Ct. 3020, 3035 n.14 (2010) ("The Court has held that although the Sixth Amendment right to trial by jury requires a unanimous jury verdict in federal criminal trials, it does not require a unanimous jury verdict in state criminal trials."); *Schad v. Arizona*, 501 U.S. 624, 634 n.5 (1991) ("[A] state criminal defendant, at least in noncapital cases, has no federal right to a unanimous jury verdict."). Accordingly, we conclude appellant's federal contention is without merit and we will proceed to examine appellant's

---

[8] *See Duncan v. Louisiana*, 391 U.S. 145, 149 (1968).

claimed right to unanimity of the jury verdict under Texas law only.

### b. Article V, Section 13

Our state constitution requires that a jury verdict in a felony case be unanimous, and under our state statutes, unanimity is required in all criminal cases. TEX. CONST. art. V, § 13[9]; TEX. CODE CRIM. PROC. ANN. art. 36.29; *Stuhler v. State*, 218 S.W.3d 706, 716 (Tex. Crim. App. 2007). From its inception in 1876, article V, section 13, has required that "petit juries in the District Court shall be composed of twelve" members. *Trinidad v. State*, 312 S.W.3d 23, 26 & n.16 (Tex. Crim. App. 2010) (citing TEX. CONST. art. V, § 13). But this provision also always has provided that a petit jury, originally composed of twelve members, may render a verdict with fewer than the original twelve, subject to legislative regulation, "[w]hen, pending the trial of any case, one or more jurors not exceeding three, may die, or be disabled[.]" *Id.* at 26 n.16 (citing TEX. CONST. art. V, § 13); *see* TEX. CODE CRIM. PROC. ANN. art. 36.29. That is, "[t]he constitution leaves the manner in which juries are selected to the legislature." *Ponce*, 68 S.W.3d at 720.

Article 33.011 of the Texas Code of Criminal Procedure states that, in a district court, a judge may impanel up to four additional jurors to sit as alternates.

---

[9] Article V, section 13, provides:

> Sec. 13. NUMBER OF GRAND AND PETIT JURORS; NUMBER CONCURRING. Grand and petit juries in the District Courts shall be composed of twelve persons, except that petit juries in a criminal case below the grade of felony shall be composed of six persons; but nine members of a grand jury shall be a quorum to transact business and present bills. In trials of civil cases in the District Courts, nine members of the jury, concurring, may render a verdict, but when the verdict shall be rendered by less than the whole number, it shall be signed by every member of the jury concurring in it. When, pending the trial of any case, one or more jurors not exceeding three, may die, or be disabled from sitting, the remainder of the jury shall have the power to render the verdict; provided, that the Legislature may change or modify the rule authorizing less than the whole number of the jury to render a verdict.

TEX. CONST. art. V, § 13.

TEX. CODE CRIM. PROC. ANN. art. 33.011(a) (West 2012); *Scales*, 380 S.W.3d at 783. Article 33.011 further provides that "[a]lternate jurors . . . shall replace jurors who, prior to the time the jury renders a verdict on the guilt or innocence of the defendant and, if applicable, the amount of punishment, become or are found to be unable or disqualified to perform their duties[.]" TEX. CODE CRIM. PROC. ANN. art. 33.011(b); *Scales*, 380 S.W.3d at 783. Thus, when a regular juror becomes unable or disqualified to perform his duties, i.e., becomes disabled per article 36.29, Texas law requires that the juror be replaced with the first alternate juror. TEX. CODE CRIM. PROC. ANN. art. 33.011(b); *Scales*, 380 S.W.3d at 783; *cf. Sneed v. State*, 209 S.W.3d 782, 786–87 (Tex. App.—Texarkana 2006, pet. ref'd) (concluding that "unable" as used in article 33.011 is indistinguishable from "disabled" as used in article 36.29).

Here, once the trial court exercised its discretion in determining that juror 31 was unable to continue performing her juror duties because she had become disabled due to physical illness per article 36.29, it then seated the available, alternate juror 39 in her place.[10] *See* TEX. CODE CRIM. PROC. ANN. art. 33.011(b); *Scales*, 380 S.W.3d at 783. The record indicates that alternate juror 39 had been given specific instructions about still being, and remaining available as, a juror, and admonitions about not doing any independent research or talking with anyone about the case; and that she was available at court as an alternate juror on the morning the trial court determined that juror 31 was no longer able to perform her duties as a juror. In accordance with article 33.011(b), the trial court replaced juror 31, whom the court found to be unable to perform her duties as a juror, with alternate juror 39, prior to the jury's rendering its verdict on appellant's guilt or innocence.

---

[10] Appellant does not argue on appeal that alternate juror 39 was unavailable or unfit to serve.

Appellant, citing *Ngo v. State*, 175 S.W.3d 738 (Tex. Crim. App. 2005), argues that the removal of juror 31 as the sole holdout for acquittal amounted to structural error.[11] However, the Court of Criminal Appeals has not decided whether a violation of article 33.011 implicates a constitutional error or a nonconstitutional or statutory error. *See Scales*, 380 S.W.3d at 786 (analyzing violation of article 33.011 as a nonconstitutional error under Texas Rule of Appellate Procedure 44.2(b)).

But even assuming for purposes of our analysis that appellant is correct that the evidence shows that juror 31 was holding out, the record reflects that the trial court explicitly dismissed her based on its determination that juror 31 was disabled and physically unable to continue her duties as a juror, and not for any reason related to what juror 31 already may have decided with regard to the merits of the case. *See Edwards*, 303 F.3d at 633–34.[12] In fact, the trial court expressly indicated that "what's going on in the jury room" with regard to any possible holdout situation was not a part of the hearing nor did it influence its ruling that juror 31 physically was unable to continue.[13]

We already have determined that sufficient evidence supports the trial court's finding that juror 31 was disabled due to physical illness based on its first-

---

[11] *Ngo* dealt with potential charge error and juror unanimity. 175 S.W.3d at 748–50.

[12] *See also Perez*, 119 F.3d at 1428.

[13] Further, each of appellant's cited Second Circuit cases is distinguishable. In *U.S. v. Thomas*, the stated basis for the district court's dismissal was the juror's purposeful refusal to apply the law. 116 F.3d 606, 617–18 (2d Cir. 1997). In such a "jury nullification" dismissal, the *Thomas* court determined that it would apply a higher evidentiary standard, considering whether the evidence revealed a "substantial possibility" that the juror was motivated not by a desire to nullify, but by legitimate concerns about the sufficiency of the evidence. *Edwards*, 303 F.3d at 632–33 (discussing *Thomas*, 116 F.3d at 623). In *U.S. v. Hernandez*, the grounds for the juror's dismissal were unclear—"it is not clear in the record that the removal was because of mental incompetence rather than to avoid a hung jury." 862 F.2d 17, 23 (2d Cir. 1988).

person interview with her, during which the court was in a superior position to observe her physical appearance and demeanor, and thereby to determine her ability to continue deliberating. *See Scales*, 380 S.W.3d at 784 n.18. Because we find no abuse of discretion in the trial court's determination that juror 31's physical illness rendered her disabled per article 36.29 and the trial court properly replaced her with the available, alternate juror pursuant to article 33.011, we overrule appellant's second issue. *See Moore*, 82 S.W.3d at 406–07 (overruling appellant's related article V, section 13, constitutional challenge where trial court had not abused its discretion by removing juror as disabled per article 36.29 due to physical illness).

### 3. Appellant's sixth issue

Appellant further asserts that the trial court abused its discretion by denying his motion for mistrial. Appellant moved for a mistrial after Kaminski testified and resubmitted his motion after juror 31 testified. The trial court denied appellant's motion, and instead determined that juror 31 was unable to continue as a juror due to physical illness and replaced juror 31 with the alternate juror.

The procedures of article 36.29 apply when a juror becomes disabled and unable to continue performing her duties. *Scales*, 380 S.W.3d at 783; *Hill*, 90 S.W.3d at 315 (holding article 36.29(a) required trial court to proceed with 11 jurors instead of granting mistrial where court dismissed juror as disabled for debilitating panic attacks). Where an alternate juror is available to replace the disabled juror, the procedures of article 33.011 also apply. *Scales*, 380 S.W.3d at 783. Article 33.011 expressly provides that an alternate juror "shall" replace a juror found to be unable to perform her duties, prior to the time the jury renders a verdict on the guilt or innocence of the defendant. TEX. CODE CRIM. PROC. ANN. art. 33.011(b). Thus, after the charge is read to the jury, where a juror is found to

21

be disabled and an alternate juror is available to replace her, she must be replaced pursuant to articles 33.011(b) and 36.29(c). *Id.* art. 33.011(b) & art. 36.29(c); *Scales*, 380 S.W.3d at 783. Thus, in an article 36.29(c) situation, such as here, the trial court is only required to discharge the jury where "an alternate juror is not available" to replace the disabled juror. TEX. CODE CRIM. PROC. ANN. art. 36.29(c). Alternatively, where no alternate juror is available to replace the disabled juror, the case can proceed to verdict with the remaining eleven jurors if the defendant, his counsel, and the State agree to that option on the record. *Id.*

Reviewing the evidence in the light most favorable to the trial court's ruling and granting due deference to its resolution of historical facts and credibility and demeanor determinations, including that juror 31 was disabled per article 36.29, and an alternate juror was available to replace her per article 33.011, there was no cause to discharge the jury. Indeed, under these circumstances, the trial court proceeded under its statutorily sanctioned, and only, option.[14] *See Scales*, 380 S.W.3d at 783. Therefore, we cannot say that the trial court abused its discretion in refusing to grant appellant a mistrial, and we overrule his sixth issue.

## B. Refusal to unseal personal juror records

### 1. Appellant's fourth issue

In his fourth issue, appellant contends that the trial court violated article 35.29 of the Texas Code of Criminal Procedure by refusing his requests to unseal the juror information sheets so that he could investigate and present juror testimony about the circumstances of juror 31's "harassment" and "intimidation" to support appellant's motion for new trial based on alleged jury misconduct. We

---

[14] In contrast, the trial court abuses its discretion in failing to give an appellant an opportunity to choose between continuing with eleven jurors or seeking a mistrial before it discharges a juror who is later found *not* to be disabled per article 36.29. *Carrillo v. State*, 597 S.W.2d 769, 771 (Tex. Crim. App. 1980).

conclude that appellant failed to show good cause to unseal the jurors' personal information.

Article 35.29 protects personal information about jurors, creating a presumption that such information may not be disclosed absent a showing of good cause by a party in the trial or a bona fide member of the news media. TEX. CODE CRIM. PROC. ANN. art. 35.29 (West 2012); *Valle v. State*, 109 S.W.3d 500, 509 & n.37 (Tex. Crim. App. 2003) (concluding that need to determine whether to file motion for new trial did not constitute good cause); *Taylor v. State*, —S.W.3d—, No. 01-11-00210-CR, 2012 WL 5986449, at *6 (Tex. App.—Houston [1st Dist.] Nov. 29, 2012, no. pet. h.) ("[R]equesting juror cards to decide whether there is a basis for filing a motion for new trial is not a showing of good cause."); *Esparza v. State*, 31 S.W.3d 338, 340 (Tex. App.—San Antonio 2000, no pet.) (concluding that "desire to probe for possible, but unspecific, issues that might give rise to allegations of jury misconduct" amounted to mere conjecture and did not constitute good cause); *Hooker v. State*, 932 S.W.2d 712, 716–17 (Tex. App.—Beaumont 1996, no pet.) (concluding that defense counsel's belief that jury misconduct had occurred and his desire for an opportunity to talk to jury regarding "a couple of thoughts" about trial did not constitute good cause). Thus, a trial court does not abuse its discretion in denying a request for disclosure of the juror information cards where the defendant fails to show good cause. *Taylor*, 2012 WL 5986449, at *5–6 (citing *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001); *Montgomery v. State*, 810 S.W.2d 372, 380, 391 (Tex. Crim. App. 1990)). "What constitutes good cause must be based upon more than a mere possibility that jury misconduct might have occurred; it must have a firm foundation." *Cyr v. State*, 308 S.W.3d 19, 30 (Tex. App.—San Antonio 2009, no pet.) (citing *Esparza*, 31 S.W.3d at 340 ("Good cause must be based on more than mere conjecture; it must

have a firm foundation.")).

In *Cyr*, the San Antonio court of appeals upheld the trial court's denial of the appellant's motion to unseal personal juror information. The appellant's trial counsel provided an affidavit stating he had been informed that a juror had approached the media indicating that she was uncomfortable with the verdict, and that the juror believed the appellant was not guilty but then changed her mind for an unknown reason, thus necessitating counsel's communication with the jurors to determine whether that reason was contrary to the trial court's instructions or the law. 308 S.W.3d at 29. However, the *Cyr* court concluded the appellant had not shown good cause—"that a juror was 'uncomfortable' with her verdict does not constitute a firm foundation that jury misconduct occurred." *Id.* at 30.

When a defendant alleges jury misconduct in an effort to impeach a verdict, rule 606(b) of the Texas Rules of Evidence prohibits a juror from testifying about "any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental process, as influencing any juror's assent to or dissent from the verdict." TEX. R. EVID. 606(b).[15] However, a juror may testify about "whether any outside influence was improperly brought to bear upon any juror." *Id.* Alleged coercive activity in the jury room, allegedly

---

[15] Rule 606(b) provides:

(b) Inquiry Into Validity of Verdict or Indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment. Nor may a juror's affidavit or any statement by a juror concerning any matter about which the juror would be precluded from testifying be admitted in evidence for any of these purposes. However, a juror may testify: (1) whether any outside influence was improperly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve.

TEX. R. EVID. 606(b).

occurring during deliberations, has been held to not constitute proof of an impermissible "outside influence" for purposes of showing jury misconduct pursuant to rule 606(b). *Franks v. State*, 90 S.W.3d 771, 800 (Tex. App.—Fort Worth 2002, no pet.) (affirming denial of motion for mistrial for jury misconduct and refusing to consider per rule 606(b) juror's affidavit that she was "coerced" into voting guilty and "finally just gave up and changed her vote" because the other jurors "told her she was being unreasonable and was crazy"); *Hart v. State*, 15 S.W.3d 117, 121–22, 124 (Tex. App.—Texarkana 2000, pet. ref'd) (affirming denial of motion for new trial and refusal to allow juror to testify at hearing per rule 606(b) where juror contended he had been "coerced" into voting guilty by the other jurors); *see also Perry v. Safeco Ins. Co.*, 821 S.W.2d 279, 281 (Tex. App.—Houston [1st Dist.] 1991, writ denied) ("Proof of coercive statements and their effect on the jury is barred by [rule 606(b)]."); *Daniels v. Melton Truck Lines, Inc.*, 704 S.W.2d 142, 144–45 (Tex. App.—Eastland 1986, writ ref'd n.r.e.) (concluding that trial court properly refused to consider per rule 606(b) jurors' affidavits concerning juror who used her position as a peace officer to "intimidate" and "shouted down those who disagreed with her"); *cf. Garza v. State*, 695 S.W.2d 58, 59, 61 (Tex. App.—Corpus Christi 1985, no pet.) (affirming denial of motion for new trial based on jury misconduct where juror testified that the other jurors "coerced" and "forced" her "guilty" vote by intimating that she was "less than human" because of her "not guilty" stance).[16]

---

[16] Also, the Fifth Circuit consistently had held that testimony regarding "pressure from other jurors" and "coercion" is not considered an "outside influence" for purposes of, and is inadmissible under, rule 606(b) of the Federal Rules of Evidence. *U.S. v. Brito*, 136 F.3d 397, 413–14 (5th Cir. 1998) (affirming denial of motion for new trial based on jury misconduct and refusal to admit juror allegation that "her verdict was coerced through threats and insults that she received from other jurors"); *U.S. v. Straach*, 987 F.2d 232, 241–42 (5th Cir. 1993) ("Although two jurors came forward after the verdicts had been returned and recorded, stating that they had maintained throughout the jury's deliberations that defendant was not guilty on all counts, but

The Texas Court of Criminal Appeals recently interpreted the plain meaning of "outside influence" in rule 606(b) as "something originating from a source outside of the jury room and other than from the jurors themselves." *McQuarrie v. State*, 380 S.W.3d 145, 154 (Tex. Crim. App. 2012). The *McQuarrie* court acknowledged that courts may not "delve into deliberations" because "[j]ury deliberations must be kept private to encourage jurors to candidly discuss the law and facts." *Id.* at 153 (citing *Tanner v. United States*, 483 U.S. 107, 117 (1987) (warning against pervasive post-verdict inquiries into jury misconduct)). Courts "may not inquire as to the subjective thought processes and reactions of the jury, so jurors should continue to feel free to raise and discuss differing viewpoints without the fear of later public scrutiny." *Id.*; *see also Garza*, 695 S.W.2d at 61 (noting that "jury deliberations often involve heated and emotional discussions into which [courts of appeals] will not intrude"). Therefore, "[a] Rule 606(b) inquiry is limited to that which occurs outside of the jury room and outside of the juror's personal knowledge and experience." *McQuarrie*, 380 S.W.3d at 153. The *McQuarrie* court went on to hold that the trial court abused its discretion in excluding juror affidavits and testimony pursuant to rule 606(b) where the evidence concerned internet research that one juror conducted at her home during an overnight break. *Id.* at 154 ("The internet resource constituted an 'outside influence.'").

We conclude that appellant's allegation that "during deliberations [juror 31] was 'intimidated and harassed' by the other jurors to the point she became stressed out" is insufficient to show good cause to unseal personal juror information. *See Cyr*, 308 S.W.3d at 30. Appellant does not point to anything in the record presenting a firm foundation that any jury misconduct occurred. *See id.* Even

had been pressured into compromising their verdicts . . ., this pressure cannot count as an "outside influence.").

26

assuming that the other jurors intimidated and harassed juror 31 because of her vote, the juror testimony sought by appellant in an attempt to prove jury misconduct does not meet rule 606(b)'s admissibility requirements because it concerns matters and statements occurring during deliberations, and their effect and influence on juror 31, rather than an outside influence "originating from a source outside of the jury room and other than from the jurors themselves.' *See McQuarrie*, 380 S.W.3d at 154. Appellant has not met his burden to show good cause; therefore, the trial court did not abuse its discretion in refusing to disclose personal juror information per article 35.29. Accordingly, we overrule appellant's fourth issue.

## 2. Appellant's fifth issue

In his fifth issue, appellant argues that the improper denial of his requests to unseal personal juror information on juror 31 deprived him of his constitutional right to due process.

Due process includes the right to a fair opportunity to defend against the State's accusations, including presenting, confronting, and cross-examining witnesses. *See Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). However, courts recognize the "weighty government interest in insulating the jury's deliberative process." *Tanner*, 483 U.S. at 120, *cited in Hicks v. State*, 15 S.W.3d 626, 630–31 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) ("The limitation on juror testimony in post-trial proceedings is intended to encourage open discussion among jurors during deliberations, to promote the finality of judgments, and to protect jurors from harassment by unhappy litigants seeking grounds for a new trial."). "[T]he jury should be protected from post-trial harassment or tampering." *McQuarrie*, 380 S.W.3d at 153 (citing *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 367 (Tex. 2000)). Thus, "[t]he integrity of jury

proceedings must not be jeopardized by unauthorized invasions," such as when a defendant seeks to make a post-verdict inquiry "into the internal processes of the jury." *Tanner*, 483 U.S. at 120 (internal quotation marks and citation omitted). Appellant's right to due process does not permit delving into matters and statements occurring during deliberations in contravention of rule 606(b). *See Golden Eagle*, 24 S.W.3d at 374–75 (holding no due process concern with rule 606(b), which is "designed to balance concerns about the threat of jury misconduct with the threat from post-verdict juror investigation and impeachment of verdicts"); *Hicks*, 15 S.W.3d at 630 (recognizing no due process concern with rule 606(b)'s general prohibition against jurors testifying as to matters and statements occurring during deliberations, and upholding trial court's refusal to admit juror's affidavit, in case of potential jury misconduct). Here, the trial court's denial of appellant's request to unseal personal juror records, to be used to obtain information about jury deliberations, did not violate due process.

## IV.    CONCLUSION

Because the trial court did not abuse its discretion in removing juror 31 as disabled due to physical illness and replacing her with an alternate juror under articles 33.011 and 36.29, and in then refusing to grant appellant a mistrial, and because the trial court did not abuse its discretion in refusing to unseal personal juror information under article 35.29, we affirm the judgments of the trial court.

/s/     Tracy Christopher
                Justice

Panel consists of Justices Frost, Christopher, and Jamison.

Publish — TEX. R. APP. P. 47.2(b).

28